SMITH *v.* PATTERSON, et al.

Apr. 21, 1952.

No. 38353 (58 So. (2d) 64)

Lee V. Prisock and E. H. Cunningham, Jr., for appellant.

**W. H. Cox,** for appellees.

**Holmes, J.**

The appellant sued the appellees for damages for false imprisonment. On the trial of the case in the court below, a peremptory instruction was given for the appellees. The appellant prosecutes this appeal, assigning as error the action of the trial court in granting the peremptory instruction for the appellees.

The material facts are undisputed. The declaration charged and the answer admitted that the appellees were partners, operating the Patterson-Welch Rexall Store at 338 West Capitol Street in the City of Jackson. The active management of the store was committed to the appellee, Walter F. Welch. The appellee, Kelly Patterson, had no active connection with the management of the store but was engaged elsewhere in the City of Jackson in the drug business, and he had no knowledge of the incidents involved in this suit until after the suit was filed.

Johnnie Cotton, a Negro, was employed in the store as a porter. On December 24, 1950, Welch received a telephone order from a man who requested that a box of candy be sent to him at 113½ West Capitol Street, and with the further request that change be sent for $20.00. Welch did not get clearly the name of the man giving the order but he sent the candy by the porter, Johnnie Cotton, to the address given and also gave the porter change for

$20. The price of the candy including tax was $4.10. The porter took the candy to the address stated and delivered it to the man there who had given the order, and this man delivered him a check on the First National Bank for $20 and the Negro porter gave him the change, that is to say, the difference between $4.10, the price of the candy, and $20. The porter returned to the store tand gave the check to Mr. Welch. The check was written illegibly and it was difficult to determine the signature on the check but it appeared to be "B. Crosby". Welch reprimanded the porter for taking the check, which, according to Welch, was contrary to the general instructions given to the porter.

On the next day, December 25, 1950, Welch went to the address at 113½ West Capitol Street, where he saw one Frederick Mellon and asked him if he knew the man who had signed the check. Mellon told him that he did not but that he had seen a man on the day before in the hallway of the building where he worked and that the man had asked permission to use his telephone; that he had permitted him to use it and that he called one Dan Breland and asked him about some work. Following that, Welch went to one or two other places in the neighborhood, including the Mayflower Cafe, in an effort to locate the man who had given the check. The porter had described the man to Mr. Welch as being a white man of stocky build and wearing a red shirt. Being unable to obtain any information with reference to the man, Welch requested Mellon, as well as the manager of the Mayflower Cafe, to let him know if later a man of the description given came in. He returned to the store and did not notify the police department. On Monday morning, December 26, the check was presented at the bank for payment and it was discovered that the bank had no such account and payment of the check was accordingly refused. On that same day, Welch received a telephone call from the manager of the cafe, advising that there was a man there

answering the description given. Welch and the porter went to the cafe and when the manager of the cafe pointed out the man, the porter stated that he was not the one who had given him the check. Welch and the porter then again returned to the store and later Welch received a call from the manager of the cafe stating that there was another man there who appeared to answer the description. Welch was the only pharmacist in the store at the time and could not leave the store. He called the police department and asked for a Mr. Bell whom he knew. Shortly thereafter, Mr. Bell, in company with another police officer, appeared at the store and Welch related to Bell what had occurred and requested that he go to the cafe and try to locate the man and get his address and find out where he worked so that he (Welch) could get in touch with him.

He did not authorize or request the police officers to arrest the man. The police officers suggested that they take the porter with them in order that he might undertake to identify the man and Welch permitted them to do this. Accordingly, the police officers took the porter with them to the Mayflower Cafe and sent the porter in the cafe to see if he could locate the man who had given him the check. The porter walked through the cafe and came back, saying that the man who had given him the check was in a booth in the rear of the cafe. The officers then went to the man in the rear booth of the cafe and asked him to go with them. Their purpose, so the officers testified, was to interrogate him about the check. The man, who later developed to be the appellant, was reluctant to go with the officers and one of the officers caught him by the arm and pulled him out of the booth and the other officer searched him for a weapon and caught him by the back of his belt and brought him out of the cafe. The officers said that they had no intention of arresting the man and were not requested or authorized by Welch to arrest him, and that they would not have arrested him but for the fact that the appellant declined to give them

any information or to cooperate with them in their investigation and engaged in profanity. For that reason, they brought him to police headquarters where they held him for investigation. He was placed in jail and remained over night, and was released the following morning.

It is unnecessary to relate here the testimony on behalf of the appellant as to the manner of his arrest and his treatment by the officers, and the testimony on behalf of the appellant to the effect that he was not the man who had given the check and was not in Jackson at the time when it was said to have been given, since the material inquiry in considering the question as to whether or not the peremptory instruction for the appellees was properly given, is whether the appellees actively participated in the arrest and imprisonment of the appellant or whether his arrest was indirectly procured by the appellees. The proof without dispute shows that all that the appellee Welch was undertaking to do was to identify the man who had given the check and ascertain his address and what he did or where he worked. It was manifestly the intention of Welch to so locate him and identify him to the end that he might collect the check. It nowhere appears in the evidence that Welch did other than request the officers to identify the man and obtain information as to his address and place of work. On the other hand, the officers testified that they had no intention of arresting him when they first approached him, and would not have done so but for the subsequent conduct of the appellant. The evidence is not sufficient to establish the fact that the appelleees, or either of them, directly or indirectly procured the arrest and imprisonment of the appellant.

The broad principle as to liability in such cases is laid down in 22 Am. Jur., p. 371, as follows:

"To be liable in an action for false imprisonment, one must have personally and actively participated therein directly or by indirect procurement."

Again it is stated in 22 Am. Jur., p. 376, as follows:

"Where a person merely directs the attention of a public officer to what he supposes to be a breach of the peace and the officer, without other direction, arrests the offender on his own responsibility, the person who did nothing more than to communicate the facts to the officer is not liable for causing the arrest, even though it is made without a warrant. If the arrest is made without the knowledge and consent of such person, there is no liability."

We do not think that the facts of this case bring it within the announced principles imposing liability. We are, therefore, of the opinion that the trial court was correct in granting the peremptory instruction for the appellees and the judgment of the court below is accordingly affirmed.

Affirmed.

**Roberds, Alexander, Hall,** and **Kyle, JJ.,** concur.