370 So.2d 696 (1979)
Boutros JARJOURA
v.
FRED'S ONE & TWO DOLLAR STORE, INC.
No. 50954.
Supreme Court of Mississippi.
May 2, 1979.
*697 Ronald W. Lewis, Catherine V. Kilgore, David G. Hill, Oxford, for appellant.
Mitchell, McNutt, Bush, Lagrone & Sams, Jack R. Reed, Jr., Tupelo, for appellee.
Before ROBERTSON, WALKER and LEE, JJ.
LEE, Justice, for the Court:
Boutros Jarjoura filed suit in the Circuit Court of Lafayette County, Honorable W.W. Brown, presiding, against Fred's One & Two Dollar Store, Inc., seeking damages for slander, false imprisonment, false arrest and assault. After both parties had presented evidence and rested, the trial judge sustained a motion in favor of Fred's One & Two Dollar Store (Fred's) for a directed verdict, and Jarjoura has appealed here.
The evidence for appellant indicates that on August 31, 1976, he arrived from United Arab Emirates, in Oxford, Mississippi, after having been picked up in Memphis by his brother, John Jarjoura. The brother had been in the United States for several years and was a student at the University of Mississippi, and he spoke and understood the English language. Appellant could not speak English, and planned to enter the University of Miami for one semester to take an intensive course in English before entering college at Ole Miss.
On September 4, 1976, the two brothers went to Fred's in Oxford for the purpose of purchasing some personal items. While in the store, appellant decided to buy some blue jeans, but wanted to try them on in order to determine whether or not they fit. Fred's store is comprised of a large open area with display aisles. In the rear of the open area, there is a door leading to a storage place and there is also a restroom and office in the area. Appellant's brother had shopped in the store previously and had used the restroom for the purpose of trying on wearing apparel. He directed appellant to the area. As appellant approached the storeroom, he was met by the manager and was prohibited from going any farther. His brother inquired of the manager the reason and was informed that it was against the store policy to try on clothes in the restroom. Thereupon, the brothers returned to the display racks, put the blue jeans back in place, paid for articles they had purchased and started away from the store. After walking out the door, the brother became aware that appellant was not with him, and he returned to discover what had happened.
As appellant started to leave the checkout counter, he was stopped by the manager and was detained by him until police were called and arrived, in spite of the objections by appellant and his brother. When the police arrived, there was a short discussion, people were looking at them, appellant and his brother were embarrassed, knowing that the people thought they were accused of being thieves. The officer suggested they *698 go into the back area, where appellant was asked to remove his blue jeans. He complied with the request, and an employee of the store took the jeans to the front to inquire whether or not the brand was the same as that carried by the store, and returned with the information that they were different brands and that the jeans did not come from Fred's store.
The evidence for appellee reflects that a part-time employee was coming from an upstairs office and was proceeding down the stairs to the stockroom when he saw appellant and his brother enter the storage area. Appellant was carrying a pair of jeans over his arm. The employee claimed that he observed appellant enter the restroom marked "Employees Only" and that he then informed the manager about the incident. They went toward the rear of the store and met appellant coming out with a pair of blue jeans over his arm. Appellant went to the jean display area and in a few moments, turned and attempted to re-enter the storage area when he was told by the manager that only employees were allowed there. The manager claimed that he later noticed what appeared to be a "security pin" (tag which identified store merchandise) near the cuff of the pants appellant was wearing. They are placed toward the cuff of each pair of pants with the tag appearing on the inside and with only a small straight pin showing on the outside. The jeans appellant was wearing appeared to have a straight crease in them and were new. The manager said that when they went into the storage area after the officer had arrived, appellant voluntarily took off his jeans.
The sole question here is whether under all the facts there was a question of liability for the jury to pass on, and whether the trial judge erred in directing a verdict for appellee.
Appellee defends upon the qualified privilege and Mississippi Code Annotated Section 97-23-51 (1972), which sets forth:
"If any person shall commit or attempt to commit the offense of shoplifting, as defined herein, or if any person shall willfully conceal upon his person or otherwise any unpurchased goods, wares or merchandise held or owned by any store or mercantile establishment, the merchant or any employee thereof or any peace or police officer, acting in good faith and upon probable cause based upon reasonable grounds therefor, may question such person, in a reasonable manner for the purpose of ascertaining whether or not such person is guilty of shoplifting as defined herein. Such questioning of a person by a merchant, merchant's employee or peace or police officer shall not render such merchant, merchant's employee or peace or police officer civilly liable for slander, false arrest, false imprisonment, malicious prosecution, unlawful detention or otherwise in any case where such merchant, merchant's employee or peace or police officer acts in good faith and upon reasonable grounds to believe that the person questioned is committing or attempting to commit the crime of shoplifting as defined in section 97-23-45, Mississippi Code of 1972." (Emphasis added).
In J.C. Penney Co., Inc. v. Cox, 246 Miss. 1, 148 So.2d 679 (1963), there was no evidence that any person had seen the plaintiff take articles in the store, and the only testimony was to the effect that it was suspected that she had taken something. Under such suspicion, the manager stopped her and searched her purse. The Court held that probable cause, where there is no conflict, is for the determination of the court and that no probable cause existed, stating:
"From the evidence in this case, no one saw the defendant take anything. In this day and time, in our ways of commerce in our mercantile business, people go through the stores, pick up goods, put them in containers, and move them about. Probable cause cannot be based on mere belief of a third person that somebody did or did not do something. None of the employees even saw her so much as touch an article, and the only evidence here that would connect the defendant in any way is that some one in the store told one *699 of the clerks that they believed that she had stolen something. In other words, a person must have reasonable grounds to believe that another is stealing his property, as distinguished from those where the offense has been completed, that he is justified in detaining the suspect for a reasonable length of time for the purpose of investigating in a reasonable manner. We do not believe that there is sufficient evidence here to raise this case to a probable cause that would justify the manager here to make the investigation in the manner in which he made it. The investigation should be based on more than mere conjecture or suspicion. It must be grounded on some definite information from some person that saw enough to justify the manager's belief that a theft had been made, and that a person was guilty of shoplifting." (Emphasis added). 246 Miss. at 10-11, 148 So.2d at 683-684.
In Butler v. W.E. Walker Stores, Inc., 222 So.2d 128 (Miss. 1969), a store employee thought she saw the plaintiff pick up two tubes of lipstick, walk away, and later saw her in another part of the store without the lipstick. The manager was informed, he detained and searched her, and, in holding that under the conflicting facts, probable cause was a question for the jury, the Court said:
"As stated, probable cause cannot be based upon suspicion, and the manager must act upon probable cause, of which he is not the final judge, and thus act at his peril.
Where the facts are undisputed, as shown by the two cases hereinbefore cited, the question of probable cause is for the court. But, where the facts are disputed, the question of probable cause is for the jury." 222 So.2d at 130.
The following are some conflicts in the evidence introduced by the parties:
(1) The manager testified that he saw the brothers leave the storeroom, while they testified the manager stopped them before they got to that area.
(2) The manager testified that use of the restroom for trying on clothes was against store policy and was prohibited; appellant's brother testified he had used it a number of times for that purpose.
(3) Appellant made no attempt to conceal the article of clothing and it was over his arm at all times.
(4) Appellee claims that the jeans worn by appellant were new with a sharp crease in them; appellant testified he had owned them for approximately two (2) months, they had been washed at least three (3) times, they had not been ironed and had no stiff crease in them.
(5) The manager testified he saw what he thought was a "security pin" at the cuff of appellant's blue jeans, which was a strong indication to him that they were the store's jeans, when there was no security pin in the jeans and previously on a deposition by the manager, he made no mention of the "security pin."
The above evidence goes to the question of whether Fred's manager acted in good faith and upon probable cause based upon reasonable grounds in ascertaining that appellant was guilty of shoplifting. Under the rule announced in Paymaster Oil Mill Company v. Mitchell, 319 So.2d 652 (Miss. 1975), on motion for directed verdict, all evidence, together with reasonable inferences flowing therefrom, must be considered most favorable for the person against whom the motion for directed verdict is sought, all evidence of the party seeking the motion in conflict with the opposite party's evidence is to be disregarded and, if there is presented a question for the jury, the motion should be overruled. We are of the opinion that under all the facts of this case, questions of liability and damages were presented for the jury, and the trial judge should have submitted the issues to the jury under proper instructions. He committed error in not doing so. Consequently, the case must be reversed and remanded for a new trial on the merits. This is a case where, rather than grant a motion for directed verdict, had the jury verdict favored the appellant, it would have been better for the trial judge to consider and *700 sustain a motion for judgment notwithstanding the verdict, in which instance the case would now be finally disposed of. Claiborne v. Greer, 354 So.2d 1109 (Miss. 1978).
REVERSED AND REMANDED.
PATTERSON, C.J., SMITH and ROBERTSON, P.JJ., and SUGG, WALKER, BROOM and BOWLING, JJ., concur.
COFER, J., took no part.