John N. Godines and Joseph D. Phillips, Jr., by and through their parents and next friends, appeal the summary judgment granted in favor of First Guaranty Savings and Loan Association (First Guaranty) and James P. Achee. Godines and Phillips were plaintiffs below in a suit filed in the Circuit Court of Harrison County, Mississippi, alleging assault and battery, slander, false arrest, and false imprisonment by First Guaranty by and through its agent, Achee. The complainants sought $500,000 actual and $500,000 punitive damages. Godines and Phillips appeal, assigning as their only error that the trial court improperly granted summary judgment.
The events took place at a First Guaranty Savings and Loan branch office located in a small shopping center adjacent to Gulfport High School. The branch's layout is generally reflected in Exhibit "A" to the deposition of Pat Achee. The principal action occurred in the teller area, the adjacent office with separate doors leading to the teller area and lobby, and in front of the branch office.
About one week before the incident in question, Joseph Phillips, a high school student, went to the First Guaranty branch office in question after working hours. On that occasion Achee met Phillips at the door and told him the bank was closed.
About one week later, on Friday, August 17, 1984, Phillips was given a ride to the bank by his friend, John Godines, also a high school student. Godines parked his truck in front of the bank and Phillips went inside to cash a check. Godines read a newspaper while waiting in the truck.
Achee stated he immediately became suspicious of Phillips because when he entered the branch he did not immediately get in line, but rather walked to a chair and sat for a few seconds and then arose and started pacing. It was at this time that Achee moved behind the teller's counter to observe things further.
Inside, Phillips got in the line behind two or three people at the only open teller window. When Phillips' turn came, Achee waited on him instead of the teller. The other customers left, including Achee's father, who was not an employee of First Guaranty.
Phillips asked to negotiate a two-month-old $60 check drawn on a Florida bank. Achee asked Phillips whether he had a checking or savings account with the bank, to which Phillips responded, "A checking account," which was not the case. Phillips told Achee his parents' names and that he lived a couple of blocks away from the branch on Courthouse Road. Achee also looked for a savings account listing, which Phillips did have, but could not confirm it because Phillips did not have his passbook, did not know the account was a savings account, and the check was to Joe Phillips, not Joseph D. Phillips, the style of the savings account.
Phillips' behavior inside the branch was, in his own words, "strange and erratic." While waiting for Achee to cash the check, Phillips ran his fingers nervously through his hair and showed his impatience. He watched his reflection overhead in a mirrored ball chandelier in the lobby and became so impatient that he banged his forehead against the teller's counter. At no time, however, did Phillips display a weapon or physically attack anyone. There is *Page 1323 
no evidence that he verbally threatened anyone.
After Achee checked the records, he left Phillips at the teller's window and entered an adjacent non-public office, leaving the door to the teller area open. Achee told employee Rhonda Herrod to call the police about a suspicious person. At this point, Phillips opened the lobby door and entered without permission, carrying a crushed drink can. Achee turned around to face Phillips, who was standing between Achee and the doors. Phillips stated he entered the door because it was taking a long time to cash the check and he thought Achee may have needed more information.
Phillips is six feet three inches tall and weighs two hundred fifteen pounds. Achee directed Phillips to leave the office. Phillips complied and Achee locked the door behind him.
After the office incident, Achee and Phillips resumed the transaction at the teller's window. After writing down Phillips' driver's license number and getting his endorsement, Achee cashed the check. The police dispatcher called back during this transaction and was put through to Achee. To the question whether things had settled down, Achee said, no; to whether he could give a description, he said he could not; and to how many people were involved, he replied "safety deposit boxes are one dollar a month." Rather than suggesting suspicious activity or a mere check forgery, this reply signaled police that one person was involved in a robbery.
Achee also paid the check with money which set off a silent alarm, although he denied knowing this. After Achee paid Phillips, he left the building, with Achee following him out. During this entire time, Phillips did not exhibit any kind of weapon or physically attack anyone inside.
In the meantime, Gulfport patrolman John Dawson had arrived on the scene and took up a position at the northeast corner of the branch building. He spoke with Achee's father, Norris Achee, who pointed out Godines in the truck as the driver of the person inside. Officer Dawson approached the truck and ordered Godines, who was still reading his newspaper, out of the truck and fall down onto the pavement. Officer Dawson retreated to his position at the corner of the building.
Phillips walked out the front door, saw Godines lying on the ground, and said, "Get up, John, let's go." Achee exited the bank about this time and nodded to Officer Dawson. Phillips heard "Freeze," and was surrounded by several policemen, their weapons drawn. He was ordered face down on the pavement, searched, handcuffed, and taken in a police car to the station. Godines was not formally arrested nor handcuffed, but was told to follow the police car to the station. Upon arrival, Phillips was processed, interrogated for one and one-half hours, and then released. Godines was photographed and questioned for about 45 minutes and then released. Neither was charged with any crime. Neither was physically injured.
Achee and First Guaranty moved for a summary judgment, which the trial court heard but did not decide. On the day of trial, before a different Circuit Judge, Achee and First Guaranty re-urged this motion and the trial court declared a mistrial and granted summary judgment in favor of both defendants. From that judgment followed this appeal in timely fashion.
 II. May Plaintiffs Recover for False Arrest or False Imprisonment?
The controlling issue on appeal is whether Achee's actions as outlined above present a factual dispute as to whether Achee procured or instigated Phillips' arrest.
Phillips and Godines suggest the controlling issue is whether Achee had probable cause to effectuate the arrest. Brief for Appellants at 9. They cite Southwest Drug Stores of Mississippi,Inc. v. Garner, 195 So.2d 837 (Miss. 1967), supporting its premise that probable cause is a question of fact negating summary judgment. Garner, however, involved a statutory privilege to detain persons suspected of shoplifting when detained on probable *Page 1324 
cause. There, the Court held that under the circumstances the trial court correctly left the question of probable cause to the jury. The distinction the Bank and Achee draw is that Garner
involved physical detention by the store manager. Thus, without question the manager caused the detention. To the same effect areJarjoura v. Fred's One Two Dollar Store, Inc., 370 So.2d 696
(Miss. 1979), and Butler v. W.E. Walker Stores, Inc.,222 So.2d 128 (Miss. 1969). Jarjoura and Butler also stand for the proposition that probable cause means more than mere suspicion or conjecture. Jarjoura, 370 So.2d at 698-99.
However, this Court has acknowledged that before a person may be held liable for causing false imprisonment through false arrest, that person "must have personally and actively participated therein directly or by indirect procurement." Smithv. Patterson, 214 Miss. 87, 93, 58 So.2d 64, 66 (1952). SeeProsser and Keeton on the Law of Torts 52 (5th Ed. 1984). Procurement is not broadly defined, however.
Again in Patterson, the Court, quoting from American Jurisprudence, stated:
 Where a person merely directs the attention of a public officer to what he supposes to be a breach of the peace and the officer, without other direction, arrests the offender on his own responsibility, the person who did nothing more than to communicate the facts to the officer is not liable for causing the arrest, even though it is made without a warrant. If the arrest is made without the knowledge and consent of such person, there is no liability.
Id. at 94, 58 So.2d at 66.
In Patterson the Court upheld a peremptory instruction in favor of defendant, who merely asked police officers to go to a cafe and determine the identity, address and place of employment of a man who had given defendant a bad check. The officers did not intend to arrest the plaintiff, but did so after plaintiff refused to cooperate. The Court held the evidence insufficient to establish that defendant directly or indirectly procured the arrest.
In Lenaz v. Conway, 234 Miss. 231, 105 So.2d 762 (1958), the Court upheld a jury verdict for defendant on conflicting evidence of whether defendant caused a warrantless arrest. The defendant's proof at trial was that he merely related facts without any other direction to police. The Court cited Patterson, supra.
This Court's opinion in Patterson and Lenaz seem to follow the general law. See generally, Annot. 21 A.L.R.2d 643, 694 § 23 (1952 Supp. 1987). Restatement (Second) of Torts § 45A states:
 One who instigates or participates in the unlawful confinement of another is subject to liability to the other for false imprisonment.
In comment c the Restatement authors explain what amounts to instigation:
 Instigation consists of words or acts which direct, request, invite or encourage the false imprisonment itself. In the case of an arrest, it is the equivalent, in words or conduct, of "Officer, arrest that man!" It is not enough for instigation that the actor has given information to the police about the commission of a crime, or has accused the other of committing it, so long as he leaves to the police the decision as to what shall be done about any arrest, without persuading or influencing them.
Thus, the major question is whether Achee's actions were the equivalent, in words or conduct, of stating, "Officer, arrest that man!" See Howell v. Viener, 179 Miss. 872, 176 So. 731
(1937) (defendant called on police to arrest plaintiff and charged him with being a counterfeiter).
First Guaranty and Achee cite Pokorny v. First Federal Savings Loan Association, 382 So.2d 678 (Fla. 1980), where the Florida Supreme Court upheld a jury verdict for defendant under a similar factual setting of employees reporting a suspected attempted robbery. The Court held:
 In the case sub judice, the evidence does not show that defendant's employees at any time detained either of the plaintiffs. Nor does the record show that the employees of the defendant ever requested the F.B.I. to arrest either of the plaintiffs. *Page 1325 
The defendant's employees reported a possible attempted robbery and identified plaintiffs as the suspects. As long as the employees acted reasonably, their action did not constitute "direct procurement of an arrest" as set forth. . . .
Id. at 682. The policy behind such a rule is the encouragement of citizen involvement in reporting crime, the Florida Court noted, Id. at 682, but the Court's qualification that the employees "acted reasonably" suggests that procurement might hinge on some reasonableness of the employee's actions. The Florida District Court of Appeals suggested that false information maliciously supplied might give rise to an action for unlawful arrest. See Erp v. Carroll, 438 So.2d 31, 41 (Fla.Ct.App. 1983).
At least one court requires that a person giving information to police act "reasonably" under the "facts then known or readily available to him." Deadman v. Valley National Bank of Arizona,154 Ariz. 452, 461, 743 P.2d 961, 970 (1987).
What amounts to instigation depends on the facts and the inferences to be drawn therefrom in each particular case. SeeThurman v. Cundiff, 2 Kan. App. 2d 406, 580 P.2d 893, 897 (1978).
While merely providing accurate information to police may not be instigation, knowingly giving false information may be an attempt to influence the officer's judgment in deciding whether to effect an arrest. This may be enough to hold the informer liable. See Ginn v. Citizens Southern National Bank,145 Ga. App. 175, 178, 243 S.E.2d 528, 531 (1978); Garner v. TexasDiscount Gas Co., 723 S.W.2d 446, 447 (Mo. Ct. App. 1987);Powers v. Carvalho, 117 R.I. 519, 368 A.2d 1242, 1248 (1977); 1 F. Harper, F. James O. Gray, The Law of Torts § 4.11 at 512-13 (2d ed. 1986).
The Bank and Achee rely on Vickers v. First MississippiNational Bank, 458 So.2d 1055, 1061 (Miss. 1984), for the premise that only material factual disputes negate summary judgment. From the foregoing, they suggest that there is no material factual dispute concerning Achee's good faith delivery of information to police, acted upon by the police, without a request to have Phillips arrested.
Here, however, Achee gave to police a code for reporting an armed robbery in progress when Phillips was attempting nothing of the kind. Achee went further and followed Phillips outside and pointed at him as the suspect when police arrived. The Arizona court held a jury question was framed under very similar circumstances in Deadman v. Valley National Bank of Arizona,supra.
We think, at least as to Phillips, granting summary judgment on the question of instigation was premature. Likewise, judgment on the assault and battery and slander claims seems premature, since both are tied in some respect to the false arrest claim.
While Achee's involvement in Godines' arrest is more tenuous, we likewise think summary judgment as to Godines' claims was premature.
Our opinion should not be taken as intimating a suggested disposition upon remand. All we hold is that material factual disputes remain with regard to the issue of whether Achee and, vicariously, First Guaranty, instigated Phillips' and Godines' detention.
Having reviewed the record as submitted from the Circuit Court of Harrison County, and having found error therein the summary judgment rendered below on April 21, 1986, was erroneous; accordingly, this case is reversed and this case is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and ZUCCARO, JJ., concur.
GRIFFIN, J., not participating. *Page 1326