WINTERS *v.* GRIFFIS

No. 40708 March 17, 1958 101 So. 2d 346

*Carter & Van Every,* Columbus; *George F. Henry, Jr.,* Starkville, for appellant.

*L. W. Brown,* Starkville, for appellee.

HALL, J.

This is an action for damages for malicious prosecution brought by the appellant against the appellee.

The proof showed that a concern by the name of Mississippi Home Builders was being operated by Mr. and Mrs. George Eakin and the business had not prospered. It was engaged in the manufacture of ammunition boxes under a subcontract from Jackson Shell Box Company. When a freight car of shell boxes had been manufactured they were inspected by a government inspector and were shipped to destination and the Mississippi Home Builders was required to draw a draft on the Jackson Shell Box Company to which was attached the inspection report, the invoice and the bill of lading, and these drafts were payable at Deposit Guaranty Bank and Trust Company in Jackson pursuant to authorization from that bank when the instructions were complied with.

It is not clear from the record as to who was the owner of Mississippi Home Builders, but the record does show that a man by the name of Ballard either owned it or was interested in it in some manner. The company was operating in Oktibbeha County and when the Eakins had gotten rather heavily involved Mr. Ballard, along with the appellee Griffis, took over the business and placed Mr. Winters in charge as the plant foreman, and he operated it for several weeks. Evidently the appellee did not own any interest in the plant but the plant was buying all of its lumber from him and was indebted to him in the sum of approximately $15,000 when Winters took over. Winters had nothing to do with the office management of the concern except that he was authorized to sign the checks which were issued against the bank account in Starkville, and this bank account was set up under the name of Mississippi Home Builders Special Account. On October 24, 1953, Winters drew a salary check for $200 payable to himself and went to the place of business of Mr. Griffis and asked to have it cashed. It happened that Griffis had recently made a deposit and did not have

sufficient cash on hand to cash the check and instructed his bookkeeper to go to Mr. McKinnon's store and get the cash on it. This was done and upon his return the bookkeeper delivered the money to Winters.

According to the testimony of the bank president, there was a sufficient amount on deposit in the special account to pay the check at that time, but other checks were outstanding or became outstanding in a short time thereafter. McKinnon was slow about getting his check to the bank for payment and when it finally reached the bank, the other checks had already reduced the balance on deposit to an amount insufficient to take care of the check and it was accordingly not paid by the bank. Later McKinnon called on Griffis to make good his endorsement on the check and he did so by paying McKinnon the amount thereof. And Griffis has never yet been able to collect the $200 out of Winters. In fact Winters discontinued his employment with the Mississippi Home Builders a short time thereafter.

Griffis later went to see his private attorney and according to the record disclosed to his private attorney the full facts in connection with the whole transaction and the attorney advised him that Winters was subject to prosecution under the Mississippi bad check law and also advised him to see the district attorney about the matter. He saw the district attorney and according to the record disclosed the entire facts with reference to the transaction to the district attorney, and the district attorney had him come before the grand jury and disclose the situation to the grand jury, and at the May 1954 Term of circuit court the grand jury returned an indictment against Winters. Winters was not arrested and placed under bond for his appearance until May 31, 1954, after the term of court had adjourned.

Before the next term of court Griffis had a heart attack and his physician advised him to never again climb the stairway to the courtroom in Starkville. And there-

after Griffis did not return to court to prosecute the case and on at least one occasion he talked to the circuit judge about his physical condition and was excused from attending court at that time. In fact the first time that Griffis ever again climbed the stairway to the courtroom was on the day when this suit was tried. At the trial the jury returned a verdict in favor of the plaintiff Winters for $1.00, but before the term of court adjourned Winters made a motion to set aside the verdict and grant a new trial because of the insufficiency of the amount of the verdict. Griffis made a motion for a judgment notwithstanding the verdict and the circuit judge continued both motions and had the record transcribed and at a subsequent term of court he dictated his opinion into the record whereby he stated that after reading the facts as disclosed by the record he had reached the conclusion that Griffis was entitled to a judgment notwithstanding the verdict. Judgment was entered accordingly setting aside the judgment verdict and rendering a judgment in favor of Griffis notwithstanding the verdict. From which action this appeal is taken.

██ █ It is essential in a suit for malicious prosecution that there must be shown malice as well as want of probable cause for the prosecution. 34 Am. Jur., Malicious Prosecution, Section 44 and Section 46, pages 727 and 729. The burden of proving both is upon the plaintiff. Malice may be proved by circumstantial evidence because in the nature of things it is incapable of positive direct proof. 34 Am. Jur., Malicious Prosecution, Section 135 page 782. And the want of probable cause must be shown and this may be by circumstantial evidence too, but it is ordinarily necessary for the plaintiff to show circumstances from which want of probable cause may be inferred. 34 Am. Jur., Malicious Prosecution, Section 140, page 784.

 It is also permissible for the defendant to show that he sought competent legal advice and also to show

that before the prosecution was commenced he sought the advice of the district attorney. 34 Am. Jur., Malicious Prosecution, Section 71, page 747, and Section 72, page 748.

■■ ■ In 54 C. J. S., Malicious Prosecution, Section 14, pages 966-968, there is a good statement on the subject under consideration which we quote:

"INSTIGATION OR PARTICIPATION BY DEFENDANT.

"Defendant must have been the proximate and efficient cause of maliciously putting the law in motion in the original proceeding.

"The test of liability in an action for malicious prosecution is: Was defendant actively instrumental in putting the law in force? In order to sustain the action, it must affirmatively appear as a part of the case of the party demanding damages that the party sought to be charged was the proximate and efficient cause of maliciously putting the law in motion, and, if such fact appears, defendant is liable, although he did not actually make or sign the affidavit on which the warrant was issued, or although he was not the prosecutor of record. Mere passive knowledge of, or acquiescence or consent in, the acts of another is not sufficient to make one liable; in order to impose liability there must be some affirmative action by way of advice, encouragement, pressure, etc., in the institution, or causing the institution, of the prosecution, or in affirmatively encouraging its continuance after it has been instituted. Unsuccessful efforts to secure the institution of proceedings, however malicious or unfounded, are not actionable as malicious prosecution.

"No liability, as for malicious prosecution, attaches merely by reason of testifying as a witness for the prosecution, or by reason of the fact that one's name was indorsed on an indictment or signed to an information or

complainant prepared on an independent investigation by the prosecutor. So, also, the mere signing of an attachment bond as surety is not sufficient to subject one to the penalties of a malicious prosecution. A defendant who makes an affidavit on which a void search warrant is issued, but who neither delivers it to the officer nor directs it to be delivered, nor directs a search to be made, is not liable for the execution of the warrant. The fact that defendant went before the grand jury on process of the state, where it did not appear that he made any effort to procure the indictment, does not make him liable; but where, by means of a grand jury investigation, he corruptly or oppressively brought about the indictment and prosecution of another, maliciously and without probable cause, he is guilty of malicious prosecution the same as though he had sworn out a warrant in the first instance.''

 We have carefully examined the record in this case and we are of the opinion that the plaintiff wholly failed to meet the burden which the law casts upon him, in that he did not have any proof of want of probable cause. The defendant himself testified that he had no malice whatsoever toward the plaintiff and had never had any ill-feelings toward him. There is not one word of proof in the record to show to the contrary. We are therefore of the opinion that the judgment of the circuit court is correct and that the case should therefore be affirmed.

Affirmed.

*Roberds, P. J.,* and *Kyle, Holmes* and *Gillespie, JJ.,* concur.