611 So.2d 998 (1992)
Lee BANKSTON
v.
PASS ROAD TIRE CENTER, INC., Elbert Williams, Sandy Whitehead, H.T. Hargrove, George H. Payne, Brian K. Smith, C.M. Rogers, and the City of Gulfport.
No. 07-CA-59544.
Supreme Court of Mississippi.
December 31, 1992.
*1001 Harry P. Sneed, Jr., Gulfport, for appellant.
Joe Sam Owen, Gulfport, William E. Whitfield, III, Bryant Colingo Williams & Clark, Gulfport, for appellees.
En Banc.
PITTMAN, Justice, for the Court:
This cause of action, arising out of the June 5, 1984, arrest of Lee Bankston, was filed August 2, 1985, against the City of Gulfport, its police department, The Pass Road Tire Center, its owner, and its manager. At trial, the lower court granted the Defendants' Motion for Directed Verdict. We find error in the trial court's determination that the action was barred by the statute of limitations; however, we do not find error in the trial court's determination that Bankston failed to establish a prima facie case of malicious prosecution and/or deprivation of property in violation of civil rights. We affirm the directed verdict. We also consider whether the trial judge was correct in his denial of the Defendants' request for attorney's fees and affirm the denial.

I.
From February 14 until February 24, 1984, Randy Gaffney made a series of purchases from The Pass Road Tire Center, a tire store and distributor of Goodyear and Laramie Tires located on Pass Road in Gulfport, Mississippi. The sole shareholder of Pass Road Tire is Elbert Williams. The business is managed by Sandy Whitehead.
On February 14, Gaffney gave two checks payable to Pass Road Tire in the amounts of $468.00 and $69.00 for tires. The checks were drawn on the account of C & R Tire, a tire concern which was owned partly by Gaffney which sold tires to others. On February 21, Gaffney passed a third check to Pass Road Tire in the amount of $2,362.86 for the purchase of tires. And finally, on February 24, Gaffney wrote a check in the amount of $6,203.94 for the purchase of tires from Pass Road Tire.
Gaffney delivered several of these new tires to Fleet Tire Service around February 20, 1984. While at Fleet Tire Service Gaffney met Lee Bankston who was also at Fleet Tire Service doing business. Bankston was the owner/proprietor of a used tire shop located in west Gulfport. He dealt primarily in used tires but occasionally sold new tires. Bankston agreed to purchase thirty-three (33) new truck tires from Gaffney. Gaffney delivered them to Bankston on February 24 at Bankston's store. Bankston paid $3,225.00 for the tires, which originated at Pass Road Tire and were marked with the Pass Road Tire logo. When Bankston inquired about the origin of the tires, Gaffney told him that it was none of his business. Bankston had borrowed most of the $3,225.00 from a local financing company. Gaffney gave Bankston a receipt and left town. Later in the day, Bankston sold eleven (11) of the tires to Michael Wells.
On February 25, 1984, Whitehead at Pass Road Tire received one of Gaffney's checks returned from the bank with the inscription *1002 "account closed." Eventually, all of Gaffney's checks were returned and not honored.
Wells realized that the tires he purchased from Bankston were from Pass Road Tire and called Pass Road Tire to determine if he could purchase similar truck tires at a lower price. Wells wanted to bypass Bankston's profit margin. Wells was told by Pass Road Tire that the tires had been illegally removed from their warehouse. Whitehead and one or more officers from the Gulfport Police Department went to Wells' home to identify the tires. Wells explained where he had gotten the tires. The officers copied the Department of Transportation numbers from the tires.
Whitehead, upon the advice of Williams, filed a formal complaint dated February 25 against Gaffney at the Gulfport Police Department. Whitehead then proceeded to Bankston's tire business. Whitehead confronted Bankston about the remaining tires purchased from Gaffney. Eighteen (18) tires remained. Bankston could not find his receipt to satisfy Whitehead that he had in fact purchased the tires from Gaffney. Whitehead asked Bankston not to sell the remaining tires pending the investigation by the Gulfport Police Department. Bankston did sell a majority of the remaining tires.
Officer C.M. Rogers was initially in charge of the investigation. By Wednesday, February 29, the continued investigation was transferred to Investigator Brian K. Smith.
Assistant Chief of Police George Payne instructed Officer Rogers to consult with the District Attorney's Office as to an appropriate course of action in light of the fact that Gaffney's whereabouts were unknown. Officer Rogers discussed the situation with the District Attorney's Office on February 29. After consultation, Officer Rogers and Investigator Smith went to Bankston's store for the purpose of impounding the tires that remained in his possession originating from Gaffney. Only four tires originally purchased from Gaffney were still in Bankston's possession. Bankston was absent; therefore, the officers gave a receipt to one of Bankston's employees for the tires. Due to a lack of storage space at the Gulfport Police Department, a custody storage request was made to Pass Road Tire. At this time, Investigator Smith was advised by the District Attorney's Office to discontinue impounding any more tires.
Wells was contacted by the Gulfport Police Department on the same day and instructed to bring the tires sold to him by Bankston to the Police Department for impounding. On March 9, 1984, Wells filed a suit in County Court of Harrison County for claim and delivery against Lee Bankston d/b/a Lee Bankston Tires and Pass Road Tire Center, Inc. Bankston filed his answer to Wells and filed a cross-complaint against Pass Road Tire Center for the value of the tires impounded from his premises.
Investigator Smith presented his reports to the Harrison County Grand Jury. On May 25, 1984, the Grand Jury returned an indictment against Gaffney and against all the recipients of tires sold by Gaffney, Bankston and two other Gulf Coast residents (William J. Moody and Wayne N. Thomas). These men were arrested and processed by the Gulfport police. (Police records indicated that Bankston had been charged once before, in July of 1980, with possession of stolen property to which Bankston had pleaded guilty to a reduced charge of receiving stolen property of less than $100.00 and was fined $500.00.) The charges against Bankston resulting from the Gaffney investigation were dismissed, nolle prosequi, by the District Attorney's Office on August 6, 1984.
The civil case filed by Wells and cross-complaint filed by Bankston in County Court went to trial on September 10, 1984. The jury returned judgment in favor of Bankston against Pass Road Tire in the amount of $1,620.00.
Gaffney was finally located and arrested in May of 1985. There is no indication in the record of the outcome of the arrests of Gaffney, Moody, and Thomas.
*1003 Bankston filed suit against Pass Road Tire, Williams, Whitehead, Hargrove, Payne, Smith, Rogers, and the City of Gulfport on August 2, 1985. After more than two years of discovery and motions by the attorneys involved, the case finally went to trial on March 17, 1988. At the close of Bankston's proof, Judge Terry granted the defendants' motion for a directed verdict, finding that Bankston's claim was barred by the statute of limitations and that Bankston had put on insufficient proof for a reasonable jury to decide in his favor that the defendants were liable for malicious prosecution or for deprivation of property in violation of 42 U.S.C. § 1983.

II.
This matter is presented to this Court on the question of whether the directed verdict was appropriate. A motion for directed verdict, "made under the procedural vehicle of Rule 50(a), Miss.R.Civ.Proc., tests the legal sufficiency of the plaintiffs' evidence. The Circuit Court  and this Court on appeal  are required to consider the evidence in the light most favorable to the plaintiffs ..., giving those plaintiffs the benefit of all favorable inferences that may reasonably be drawn from the evidence. Unless the evidence is so lacking that no reasonable jury could find for plaintiffs, the motion must be denied." Wall v. Swilley, 562 So.2d 1252, 1256 (Miss. 1990). Thus, Judge Terry's dismissal of the cause of action brought by Bankston will only be upheld if the suit was not brought within the correct time period and no reasonable jury could find that any of the defendants were liable for malicious prosecution or violation of civil rights by deprivation of property.

III.
Bankston argues on appeal that he commenced action within the applicable statute of limitations and that a directed verdict on the basis of limitation of action was error. We agree. To determine the appropriate limitation period, it is helpful to review each of Bankston's claims separately and in light of the surrounding circumstances.
What is the limitation of action period for Bankston's claim of malicious prosecution? Since 1983, Miss. Code Ann. § 15-1-35 has read as follows:
All actions for assault, assault and battery, maiming, false imprisonment, malicious arrest, or menace, and all actions for slanderous words concerning the person or title, for failure to employ, and for libels, shall be commenced within one (1) year next after the cause of such action accrued, and not after.
Because this is the applicable statute of limitations, see City of Mound Bayou v. Johnson, 562 So.2d 1212, 1218 (Miss. 1990), Bankston had one year to commence his action against the defendants.
In an action for malicious prosecution arising out of an earlier theft prosecution, the right of action accrues when the trial court recalls the case from the files and enters a nolle prosequi. See Childers v. Beaver Dam Plantation, Inc., 360 F. Supp. 331 (N.D.Miss. 1973); City of Mound Bayou, 562 So.2d at 1217. Thus, in the case at bar, Bankston's cause of action for malicious prosecution did not accrue until August 6, 1984, when the nolle prosequi was ordered. Bankston filed his complaint on August 2, 1985, which is within the one year limitation period. Bankston's claim of malicious prosecution is not barred by the statute of limitations.
What is the limitation of action period applicable to Bankston's claim for deprivation of property brought pursuant to 42 U.S.C. § 1983? In Owens v. Okure, the U.S. Supreme Court held that in § 1983 actions lower courts should apply a state's residual statute of limitation for personal injury actions, rather than the statute of limitation for certain enumerated intentional torts. Owens v. Okure, 488 U.S. 235, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989). The Court noted the confusion created as to which state statute to apply and concluded the general statute of limitation, which virtually every state has, would limit the confusion and unpredictability of uniformity from state to state. Owens, 488 U.S. at *1004 245-248, 109 S.Ct. at 580-581. Furthermore, the Court said the general statute of limitation, which is generally longer, is more analogous to "the wide spectrum of claims which § 1983 has come to span." Owens, 488 U.S. at 249, 109 S.Ct. at 581.
In Mississippi, the applicable statute is Miss. Code Ann. § 15-1-49. Prior to March 12, 1990, this statute provided for a six year limitation period. Miss. Code Ann. § 15-1-49 (1972). After that date, the Legislature amended the statute to provide for a three year limitation. Miss. Code Ann. § 15-1-49 (1991 Supp.).
In the case sub judice, the six-year limitation period would apply as the claim arose under the six-year statute, and begin to run sometime in 1984 when Bankston was either deprived of his tires or arrested. The action would not be barred until six years later in 1990. As Bankston filed suit on August 2, 1985, his § 1983 claim was obviously timely commenced.
Bankston's claim of malicious prosecution and his claim of deprivation of property in violation of § 1983 are not barred by the limitation of action period. The law is clear, and this Court is required to review the directed verdict in the light most favorable to Bankston. Thus, the trial court erred in its determination that Bankston's claims were barred by the statute of limitations. A directed verdict should not have been granted on this issue.

IV.
Bankston also contends that the lower court erred in ordering a directed verdict because Bankston established a prima facie case of malicious prosecution. We disagree.
The elements of malicious criminal prosecution are:
(1) the institution or continuation of original judicial proceedings, either criminal or civil
(2) by, or at the insistence of the defendants;
(3) the termination of such proceeding in plaintiff's favor;
(4) malice in instituting the proceeding;
(5) want of probable cause for the proceedings; and
(6) the suffering of damages as a result of the action or prosecution complained of.
Strong v. Nicholson, 580 So.2d 1288, 1288 (Miss. 1991); Miss. Road Supply v. Zurich-American Ins. Co., 501 So.2d 412 (Miss. 1987); Royal Oil Co., Inc. v. Wells, 500 So.2d 439 (Miss. 1986); Pugh v. Easterling, 367 So.2d 935, 937 (Miss. 1979).
Whether Bankston failed to put on proof of all of the requisite elements of malicious prosecution is the issue in the case at bar.
Obviously, there was institution of criminal proceedings against Bankston. He was indicted and arrested.
Clearly, the nolle prosequi was termination of the charges against Bankston and was in Bankston's favor. See Royal Oil Co., 500 So.2d at 443; Pugh, 367 So.2d at 937.
Bankston does claim that he suffered a loss of income and spent money for a bail bond, but he recovered the value of the impounded tires in his cross-complaint against Pass Road Tire in the suit brought by Wells. The Appellees do not deny his losses. There is thus evidence of some damages.
Did Bankston show that the institution of the criminal proceedings was at the insistence of the defendants? Whether or not a defendant instituted the criminal proceeding in question has not been litigated to a great extent. In most cases this element has been fairly clear, such as where the defendant executes an affidavit against the plaintiff, or physically restrains the plaintiff and contacts the authorities. Royal Oil Co., 500 So.2d at 443; Owens v. Kroger Co., 430 So.2d 843 (Miss. 1983). This Court has stated, in Winters v. Griffis, 233 Miss. 102, 101 So.2d 346 (1958), the following:
The test of liability in an action for malicious prosecution is: Was defendant actively instrumental in putting the law in force? In order to sustain the action, it must affirmatively appear as a part of the case of the party demanding damages *1005 that the party sought to be charged was the proximate and efficient cause of maliciously putting the law in motion, and, if such fact appears, defendant is liable, although he did not actually make or sign the affidavit on which the warrant was issued, or although he was not the prosecutor of record. Mere passive knowledge of, or acquiescence or consent in, the acts of another is not sufficient to make one liable; in order to impose liability there must be some affirmative action by way of advice, encouragement, pressure, etc., in the institution, or causing the institution, of the prosecution, or in affirmatively encouraging its continuance after it has been instituted. Unsuccessful efforts to secure the institution of proceedings, however malicious or unfounded, are not actionable as malicious prosecution.
No liability, as for malicious prosecution, attaches merely by reason of testifying as a witness for the prosecution, or by reason of the fact that one's name was indorsed on an indictment or signed to an information or complaint prepared on an independent investigation by the prosecutor. So, also, the mere signing of an attachment bond as surety is not sufficient to subject one to the penalties of a malicious prosecution... . The fact that defendant went before the grand jury on process of the state, where it did not appear that he made any effort to procure the indictment, does not make him liable; but where, by means of a grand jury investigation, he corruptly or oppressively brought about the indictment and prosecution of another, maliciously and without probable cause, he is guilty of malicious prosecution the same as though he had sworn out a warrant in the first instance.
Winters, 233 Miss. at 108, 101 So.2d at 348. More to the point on conveying information to prosecutors is the following:
The question of information laid before prosecuting authorities has arisen in many cases. If the defendant merely states what is believed, leaving the decision to prosecute entirely to the uncontrolled discretion of the officer, or if the officer makes an independent investigation, or prosecutes for an offense other than the one charged by the defendant, the latter is not regarded as having instigated the proceeding.
Prosser and Keeton, The Law of Torts § 119 at 872-873 (5th ed. 1984).
This Court addressed instigation in the recent case Godines v. First Guaranty Savings & Loan Ass'n, 525 So.2d 1321 (Miss. 1988). Godines stated that "merely providing accurate information to police may not be instigation, [but] knowingly giving false information may be an attempt to influence the officer's judgment in deciding whether to effect an arrest. This may be enough to hold the informer liable." Id. at 1325.
More recently, this Court thoroughly discussed instigation in Benjamin v. Hooper Electronic Supply Co., 568 So.2d 1182 (Miss. 1990). This Court explained that a citizen has the privilege to put the criminal law into action by complaining to proper officials so long as it is done either in good faith, that is, for a legitimate purpose, or with a reasonable belief that the person proceeded against is guilty. "The law allows wide latitude for honest action on the part of [a] citizen who purports to assist public officials in their task of law enforcement." Id. at 1187, citing Harper, James and Gray, The Law of Torts § 4.1 at 406-407 (2d ed. 1986).
In the case at bar, if the employee of Pass Road Tire, Whitehead, were found liable for malicious prosecution due to instigation of criminal proceedings, then the corporation itself and its owner could be found liable under a respondeat superior theory. Royal Oil Co., 500 So.2d at 446. However, it is not apparent that the prosecution of Bankston was instigated at the insistence of Whitehead, Williams, Pass Road Tire, Hargrove, Payne, Smith, Rogers, or the City of Gulfport. Whitehead signed an affidavit against Gaffney, not Bankston. Whitehead cooperated with the Gulfport police by identifying tires. Whitehead stored tires at the request of the Gulfport police. Whitehead testified to the Grand Jury. Whitehead's only contact *1006 with Bankston was to inform him of the investigation and to ask him not to sell the tires. Whitehead never restrained Bankston and never executed an affidavit against Bankston. There is nothing in the record to indicate that Whitehead was not acting in good faith when supplying information to the police. This court finds nothing improper in Whitehead's behavior. The only thing that Whitehead perhaps could have refrained from doing would be his personal contact with Bankston. However, Whitehead's conversation with Bankston was not a step towards Bankston's ultimate arrest. Whitehead did not gain any information through the conversation that he passed on to the Gulfport police. Bankston did not put on any proof of Whitehead's insistence of, or an instigation of, criminal proceedings against Bankston. Whitehead merely supplied accurate information to the police and cooperated in the investigation. There is no evidence that he encouraged, advised or pressured the police to arrest Bankston.
Because Whitehead did not insist on an instigation of proceedings, Pass Road Tire and Williams cannot be found liable under a respondeat superior theory. Indeed, Williams' only action was to instruct Whitehead to file a complaint at the police station against Gaffney due to the dishonored checks.
Likewise, this Court does not find liability on the part of the Gulfport police officials (Hargrove, Payne, Smith, and Rogers) or the City of Gulfport for insistence of instigation of the criminal proceedings. Upon reading the record, it appears that the police officials made a complete investigation which was presented to the Grand Jury. In fact, the investigation file was filed under Gaffney's name, and Gaffney's name is the only name filled in on the file under the category of "suspect name." Bankston has not put on any proof that the Gulfport police officials acted in bad faith in their investigation. Bankston has not put on proof that the investigation was not independent or legitimate or based on reasonable grounds.
Did Bankston show the existence of malice in the institution of the criminal proceeding? In Mississippi, to determine if the defendants acted with malice, we must look to their subjective state of mind. Owens, 430 So.2d at 846.
In an effort to define malice, this Court has said that the term "`malice' in the law of malicious prosecution is used in an artificial and legal sense and [is] applied to prosecution[s] instituted primarily for a purpose other than that of bringing an offender to justice." Benjamin, 568 So.2d at 1191; Royal Oil Co., 500 So.2d at 444; Owens, 430 So.2d at 847. Malice "refers to the defendant's objective, not his attitude." Strong, 580 So.2d at 1293. Malice can be inferred from the fact that a defendant may have acted with reckless disregard for a plaintiff's rights. Strong, 580 So.2d at 1293. For example, this Court has found malice where the defendants "freely conceded that their lone purpose was to `get their stuff back'" and that they really didn't care what happened to plaintiffs. Id.
The controversy at hand contains none of the qualifications of malice. Bankston has not put on proof, or even speculated, as to the intent of any of the defendants. Bankston has not suggested any purpose that the defendants may have had other than justice.
Did Bankston show that the defendants acted without probable cause? For purposes of a malicious prosecution action, "[p]robable cause requires a concurrence of (1) an honest belief in the guilt of the person accused, and (2) reasonable grounds for such belief." Royal Oil Co., 500 So.2d at 443. "One is as essential as the other." Benjamin, 568 So.2d at 1190. "[I]t is ordinarily necessary for the plaintiff to show circumstances from which absence of probable cause may be inferred." Id. This Court has held that unfounded suspicion and conjecture are not proper bases for finding probable cause. Id. To determine the existence of probable cause, courts look to (1) a subjective element  an honest belief in the guilt of the person accused, and (2) an objective element  reasonable *1007 grounds for such beliefs. Strong 580 So.2d at 1294. In fact:
The existence of probable cause, which involves only the conduct of a reasonable man under the circumstances, and does not differ essentially from the determination of negligence, usually is taken out of the hands of the jury, and held to be a matter for decision by the court. That is to say, the court will determine whether upon the appearances presented to the defendant, a reasonable person would have instituted the proceeding.
Id., citing Prosser & Keeton, The Law of Torts § 119 (5th ed. 1984).
A reasonable person would have instituted proceedings in the case at bar. Pass Road Tire, Williams, and Whitehead were faced with almost $10,000.00 in dishonored checks. A reasonable person would certainly report this to the police and cooperate with the officers by supplying accurate information. And the police officers acted reasonably by locating all of the "hot" tires and making a thorough investigative report. It was also reasonable to impound the tires so as to prevent any further financial loss until a resolution could be reached. There was probable cause for each of the defendants to act as they did. After presentation to the Grand Jury about their investigation of Gaffney, it was the jurors who indicted and instigated proceedings against Bankston. The Gulfport police arrested Bankston based on the indictment.
In sum, Bankston did not make a prima facie showing of malicious prosecution. Although he showed institution of proceedings, termination in his favor, and damages, he did not show that the institution of charges was at the insistence of the defendants, that there was malice, or that there was want of probable cause. A showing of all elements is necessary for a malicious prosecution case. If Bankston has failed to put on proof of even one element, his cause of action must fail. Bankston has failed to put on proof of half the requisite elements of malicious prosecution. The directed verdict was not error. No reasonable juror could have found in Bankston's favor on his claim of malicious prosecution.

V.
The trial judge did not err in ordering a directed verdict. Bankston failed to establish a prima facie case of deprivation of property without due process of law.
Bankston claims that he was wrongfully deprived of his property after September 12, 1984, which is when a jury found in his favor in his cross-complaint against Pass Road Tire in the action brought by Wells against Bankston. The jury found in Bankston's favor with a monetary award because the tires were in the custody of the police. After the jury award, the Gulfport Police Department released to Pass Road Tire the tires impounded from Bankston and kept by Pass Road Tire. Pass Road Tire paid the damages to Bankston and sold the tires. Bankston is aggrieved by the fact that he recovered money and that Pass Road Tire recovered the tires.
42 U.S.C. § 1983 provides:
CIVIL ACTION FOR DEPRIVATION OF RIGHTS
Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State, Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress... .
Under § 1983, what is the legal responsibility of Pass Road Tire, Williams, and Whitehead? Section 1983 imposes legal responsibility on private persons only in exceptional circumstances. Private individuals may be found liable, but only after a plaintiff proves by a preponderance of the evidence that: (1) the private individual defendant deprived a citizen of his constitutional or federal rights (2) while acting under "color of state law." Private persons act under "color of state law" where claimants prove that private citizens named as defendants were joint participants in the challenged activity with the state or its *1008 agent, or a state authorized or encouraged a private citizen, or person, to deprive the claimant of rights protected by § 1983. Lugar v. Edmondson Oil, Co., 457 U.S. 922, 931-932, 102 S.Ct. 2744, 2750, 73 L.Ed.2d 482, 491 (1982); Adickes v. S.H. Kress & Co., 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970); Smith v. Winter, 782 F.2d 508, 512 (5th Cir.1986). The U.S. Supreme Court explained that a private citizen acts under color of state law where the deprivation has its source in state authority and where the private parties can be characterized as "state actors." Lugar, 457 U.S. at 937, 102 S.Ct. at 2754, 73 L.Ed.2d at 495.
Private individuals who are passive participants in criminal investigations which eventually result in deprivations are not "state actors." Carey v. Continental Airlines, Inc., 823 F.2d 1402, 1404 (10th Cir.1987) (finding no state action as to employee of airline who reported trespassing activity to city police who subsequently asked the plaintiff to leave and arrested the plaintiff); Benavidez v. Gunnell, 722 F.2d 615, 618 (10th Cir.1983) (finding no state action where a private citizen furnished information to the police officer and there is no further evidence of collusion or a plan between the private citizen and state officials).
The Fifth Circuit Court of Appeals stated in Roberts v. Louisiana Downs, Inc., 742 F.2d 221 (1984), that there is state action where there is a close connection between the state and the conduct of the actor. A determination is made by weighing the circumstances to see if there is a sufficient nexus. Id. at 224.
Pass Road Tire did store the four (4) tires impounded by the Gulfport police. The storage does not make Pass Road Tire, Williams, and Whitehead joint participants. There is nothing in the record to indicate that Williams or Whitehead suggested the impoundment or even offered to store the tires. Williams and Whitehead provided information before the impoundment, which is not tantamount to state action, and followed the direction of the police officers to store the tires. Storage of the tires is not a nexus to the impoundment. The storage had nothing to do with the decision and act of impoundment. Pass Road Tire, Williams, and Whitehead are not liable to Bankston for any alleged deprivation of civil rights.
What is the legal responsibility of Chief of Police Hargrove and Assistant Chief of Police Payne under § 1983? Respondeat superior liability does not flow for actions of an individual officer under § 1983. See, for example, City of St. Louis v. Praprotnik, 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988). For the supervisor or superior to be liable, there must be some active participation by the supervisor in the "unconstitutional" conduct or actual knowledge and acquiescence thereof. See Samples v. City of Atlanta, 846 F.2d 1328 (11th Cir.1988). Mere ratification or defense of officers by a supervisor is likewise insufficient for § 1983 to attach. Coon v. Ledbetter, 780 F.2d 1158, 1162 (5th Cir.1986). And supervisors and superiors can assert qualified immunity for the actions. See, e.g., Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).
Hargrove did not take an active role in the events leading up to Bankston's arrest or the impoundment of the tires and thus is not liable. If he did ratify the impoundment, this is not enough, under Coon, to establish liability. Payne's only actions were to review the reports and to direct Rogers to consult with the District Attorney's Office. Reading reports and advising an officer to consult elsewhere is not active participation in the impoundment of the tires. Hargrove and Payne are not liable to Bankston for any § 1983 claim.
Under § 1983, what is the legal responsibility of Officers Rogers and Smith? As government officials, Officers Rogers and Smith enjoy a limited immunity, known as qualified immunity, shielding them from liability for actions where they must use discretion in performance of their legal duties. This immunity is lost if they greatly or substantially exceed their authority. Discretionary duties enjoying a *1009 qualified immunity are duties positively imposed by law but which are dependent upon an officer's judgment or discretion. The United States Supreme Court has examined the immunity of police officers and said that police officers and other public officials may assert the defense of qualified immunity for their actions. Officers, like Rogers and Smith, are not absolutely immune from liability for their discretionary actions; they can be held liable for their discretionary actions if their conduct does violate a clearly established constitutional right of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396, 410 (1982).
Rogers and Smith impounded the four (4) tires upon advice from the District Attorney's Office. It was not a decision made by the police officers themselves. They were carrying out instructions. Discretionary decisions and actions of a District Attorney's Office are absolutely immune, a rare immunity where a government official is free from liability without any limitations, from suit under § 1983. See Briscoe v. Lahue, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). The actions of Rogers and Smith were not discretionary. They were acting upon direction from the District Attorney. Even if the impoundment was at their own discretion, they would enjoy a qualified immunity. A reasonable police officer faced with exigent circumstances concerning contraband, the rapidly disappearing tires, can seize the evidence. See, e.g., Edlin v. State, 523 So.2d 42 (Miss. 1988). An official retains qualified immunity if unusual or exigent circumstances dictate that the defense be retained in fairness to the officer. Trejo v. Perez, 693 F.2d 482, 485 (5th Cir.1982).
Rogers, Smith, and the District Attorney's Office were faced with a situation where more than seventy (70) tires had been stolen by false pretenses. After the passage of less than two weeks since Gaffney first wrote a bad check, only four (4) tires remained with Bankston. The officers and prosecutors were faced with a situation where the evidence needed for any trial might be lost and any financial recovery for the victims might be impossible.
What is the legal responsibility of the City of Gulfport in a § 1983 claim? A municipality cannot be held liable under § 1983 apart from a "policy" or "custom" being instituted by the entity or its policy-maker or policy-making authority. See, e.g., City of St. Louis, supra. Only upon a sufficient demonstration of a policy or custom of an "unconstitutional" violation, not to be confused with mere tortious conduct, can the municipality be held liable under § 1983. See, e.g., Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). Otherwise, the municipality is immunized from liability. See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981).
To determine if the actions amount to custom or policy, the Fifth Circuit Court of Appeals has explained that the actions must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees. Webster v. City of Houston, 735 F.2d 838, 842 (5th Cir.1984). Even assuming arguendo that the impoundment was objectionable as unconstitutional, Bankston has not introduced any proof that the impoundment was part of a pattern against Gulfport citizens or an act in a series of actions against him. There is no indication in the record that the City of Gulfport has a policy or custom of depriving its citizens of its tires. The City of Gulfport is not liable to Bankston under § 1983.
To conclude, Pass Road Tire, Williams, and Whitehead are not state actors and cannot be held liable under § 1983. Hargrove and Payne were not active participants in the impoundment of the tires and are thus not liable. Smith and Rogers enjoy an immunity for their actions. And the City of Gulfport does not have a policy of depriving its citizens of property by impoundment of tires; thus, the city is not liable. Judge Terry did not err in his finding *1010 that Bankston did not establish a prima facie case of violation of civil rights by deprivation of property pursuant to 42 U.S.C. § 1983. The directed verdict regarding this claim was not error. The evidence was so lacking in evidence of liability under § 1983 that no reasonable jury could have found for Bankston.

VI.
All of the defendants in the controversy at hand maintain that the trial judge erred in refusing to award attorney's fees pursuant to 42 U.S.C. § 1988. We disagree and affirm the denial. Section 1988 provides:
In any action or proceeding to enforce a provision of Sections 1981, 1982, 1983, 1985, and 1986, of this title ... the Court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, as part of the cost.
Since this Court's standard of review dictates that the discretionary decision of the trial judge to deny attorney's fees be reversed only upon an abuse of discretion, this Court must determine if such an abuse, such as misapplication of the law or an unreasonable decision in light of the alternatives, occurred. See Nationwide Mutual Insurance Co. v. Evans, 553 So.2d 1117, 1119 (Miss. 1989); Burkett v. Burkett, 537 So.2d 443, 446 (Miss. 1989); Detroit Marine Engineering v. McRee, 510 So.2d 462 (Miss. 1987).
The correct legal standard is clear and simple. An award in favor of prevailing defendants is in the court's discretion, but the award should not be made unless the plaintiff's claims were frivolous, unreasonable and without foundation. See, e.g., Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978); Fidelity Guarantee Mortgage Corp. v. Reben, 809 F.2d 931 (1st Cir.1987); Bowers v. Kraft Foods Corp., 606 F.2d 816 (8th Cir.1979); Patzkowski v. United States, 576 F.2d 134 (8th Cir.1978).
The trial judge's ruling that no reasonable jury could find in favor of Bankston after Bankston put on his proof does not mean the case was frivolous or groundless. Bankston's suit survived more than two (2) years of motions and discovery and three (3) separate Motions for Summary Judgment. It was only after Bankston put on his evidence that it became apparent that he could not make a prima facie showing of his claims. The Eighth Circuit Court of Appeals addressed this issue in Bowers v. Kraft Foods Corp., 606 F.2d 816 (1979). In Bowers, the Eighth Circuit found that attorney's fees were not necessarily warranted where the trial court had dismissed the case because Bowers did not make a prima facie showing in her action based on the Civil Rights Act. The Eighth Circuit explained that the evidence for her case may have been weak but it was sufficient to conceivably influence Bowers to believe that she had a case. Id. at 818. Likewise, in the case at bar, the suit brought by Bankston was based on the Civil Rights Act and was dismissed by the trial court because of a failure to make a prima facie showing. There is enough evidence to conceivably influence Bankston to believe that he had a valid case. He was hurt financially by the loss of the tires and the bail bond. The property was taken in his absence. The property was placed in the care of the parties who had filed a complaint with the police department. And Bankston prevailed in the suit concerning the tires brought by Wells. It is understandable that Bankston believed he had a case for deprivation of property. He was deprived of property for which he had paid. There just isn't liability on the part of the defendants due to the law of state action, active participation, qualified immunity, and custom and policy in § 1983 claims.

VII.
Even though Bankston brought action within the statute of limitations, the directed verdict was correct as to his claims of malicious prosecution and deprivation of property because he did not make a prima facie showing of the elements of malicious prosecution or of liability under § 1983. There was no abuse of discretion in the *1011 denial of attorney's fees on behalf of the defendants.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER and SULLIVAN, JJ., concur.
McRAE, J., concurs in part and dissents in part with separate written opinion joined by BANKS, J.
ROBERTS, J., not participating according to Supreme Court Internal Rules.
McRAE, Justice, concurring in part and dissenting in part:
I respectfully dissent from the majority's decision to affirm the lower court's directed verdict in favor of Pass Road Tire, Elbert Williams, Sandy Whitehead, Brian K. Smith, and C.M. Rogers. Otherwise, I concur.
The majority concedes, as indeed it must, that the seizure of tires from Lee Bankston's place of business failed to meet the exacting standards for valid searches and seizures established in our state and federal constitutions. Article 3, section 23 of the Mississippi Constitution provides:
The people shall be secure in their persons, houses, and possessions, from unreasonable seizure or search; and no warrant shall be issued without probable cause, supported by oath or affirmation, specially designating the place to be searched and the person or thing to be seized.
The Fourth Amendment to the United States Constitution likewise insures that
[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
This Court has always held that a valid warrant is an essential prerequisite to the seizure of private property unless the case falls within some recognized exception. See Rose v. State, 586 So.2d 746 (Miss. 1991); Lockett v. State, 517 So.2d 1317, 1326 (Miss. 1988). No warrant issued here.
The majority concludes that despite the constitutional deficiencies glaringly apparent in the seizure of Bankston's tires, the participants in the seizure must all be held blameless. First, the majority holds the constitutional safeguards against warrantless seizures does not apply to Pass Road Tire, Williams, and Whitehead since these parties are not "state actors." The facts do not support this finding. Pass Road Tire, along with its owner, Elbert Williams, and its manager, Sandy Whitehead, initiated the proceedings which lead to the impoundment of Bankston's tires. If these private parties had ended their participation at that point, then their conduct may not have amounted to state action. See Carey v. Continental Airlines, 823 F.2d 1402, 1404 (10th Cir.1987) (private party's reporting of trespass activity to state did not constitute state action for purposes of § 1983 action arising out of arrest); Benavidez v. Gunnell, 722 F.2d 615, 618 (10th Cir.1983) (private party did not engage in state action when furnishing information to police officer). Pass Road Tire, Williams, and Whitehead clearly crossed the line between passive and active involvement, however, when they agreed to store the fruits of the impoundment. In Lugar v. Edmondson Oil Co., 457 U.S. 922, 937, 102 S.Ct. 2744, 2754, 73 L.Ed.2d 482, 495 (1982), the U.S. Supreme Court held that "a person ... may fairly be said to be a state actor ... [where] he has acted together with or has obtained significant aid from state officials." Under any reasonable appraisal of the facts in this case, Pass Road Tire, Williams, and Whitehead manifestly "acted together with ... [and] obtained significant aid from state officials" in retrieving from Bankston's premises the tires they claimed as their own. The only part of the impoundment process in which Pass Road Tire, Williams, and Whitehead did not actively participate was the actual removal of tires from Bankston's place of business. Simply put, they used criminal process to collect personal property when a civil remedy *1012 was available  an act which would also give rise to liability. We have imposed liability upon stores who sign affidavits (and Justice Court judges who issue warrants) in an effort to collect civil debts using criminal procedures. See Wutzke v. Wayne Lee's Grocery & Market, 199 So.2d 438 (Miss. 1967); see also Benjamin v. Hooper Electronic Supply Co., 568 So.2d 1182 (Miss. 1990). Pass Road Tire, Williams, and Whitehead set the impoundment process in motion by filing a complaint; they (through Whitehead) contacted Bankston and asked him not to sell the tires; they received and stored the tires once they had been seized. I would hold that Pass Road Tire, Williams, and Whitehead were liable under § 1983 as joint participants with the state in the illegal seizure of Bankston's tires.
The majority spares Officers Rogers and Smith from liability on the alternative grounds of qualified immunity and lack of discretion. First, the majority finds that since the police officers were merely "carrying out instructions" from the district attorney when they seized Bankston's tires, their actions were not discretionary. Presumably, the majority bases this rationale on some heretofore undiscovered rule of law because, so far as I have been able to determine, policemen do not take their orders from the district attorney. It is true that a district attorney is absolutely immune from liability for his discretionary decisions and actions, but this cloak of immunity is hardly broad enough to cover any and all parties who act on his advice. Even if the policemen who seized Bankston's tires were prompted to act based on the district attorney's advice, they should not be allowed to derivatively benefit from the district attorney's immunity. See Harlow v. Fitzgerald, 457 U.S. 800, 809-815, 102 S.Ct. 2727, 2733-2737, 73 L.Ed.2d 396, 405-408 (1982) (subordinates enjoy derivative benefit from absolutely-immune superior only where subordinates act as "alter ego" of superior). In any event, it is strange that the majority should hold that the district attorney's immunity should cover the officers' conduct because "the actions of Rogers and Smith were not discretionary." Before today, officers who perform ministerial functions enjoy no immunity at all. See Barrett v. Miller, 599 So.2d 559 (Miss. 1992) (deputies who performed ministerial duty in searching house were not immune). Never before have law enforcement officials been permitted to escape liability for constitutional torts by merely asserting: "The D.A. made me do it."
The majority further reasons that even if Officers Rogers and Smith committed a discretionary act in seizing Bankston's tires, their actions were covered by qualified immunity. As the majority points out, law enforcement officials enjoy a qualified immunity from liability for warrantless searches and seizures where, due to exigent circumstances, the officers must choose between obtaining a warrant and losing the object to be seized. This Court has recognized such an exception to the warrant requirement in cases where evidence is contained within a burning building, see Rose v. State, 586 So.2d 746 (Miss. 1991), or secreted in the trunk of a mobile vehicle, see Barry v. State, 406 So.2d 45 (Miss. 1981), or where a failure to immediately proceed would endanger human life or property, see Smith v. State, 419 So.2d 563, 570 (Miss. 1982). In the instant case, the majority concludes that exigent circumstances attended the seizure of tires from Bankston's premises because Bankston might have sold the tires had the officers delayed long enough to obtain a warrant. This "emergency" falls far short of the exigent circumstances contemplated in Rose, Barry, and Smith.
I would hold that the trial court manifestly erred in directing a verdict in favor of Pass Road Tire, Elbert Williams, Sandy Whitehead, Brian K. Smith, and C.M. Rogers. I agree with the majority as to the remainder of its decision.
BANKS, J., joins this opinion.