LEE, J., for the Court:
¶ 1. This appeal arises from a civil action for malicious prosecution. Steve Ham-mack was charged in the County Court of Lowndes County with the rape of Angela Czaja, a/k/a Angela Barlett (hereinafter “Angela”). The incident occurred on July 23, 1989. Angela did not pursue the charge of rape, and it was dismissed on September 11, 1989 prior to the preliminary hearing. Hammack was then indicted for sexual battery after Angela testified before the Lowndes County Grand Jury. That charge was dropped three days prior to the trial date on August 21, 1990 because Angela decided not to pursue the prosecution of Hammack. Hammack had thus been charged with either rape or sexual battery for most of the thirteen months since the incident and filed the *850 instant action for malicious prosecution. On October 20, 1992, the case was heard before the County Court of Lowndes County and a unanimous jury assessed damages in favor of Steve Hammack, appellant and plaintiff below, against the ap-pellee and defendant below, Angela Czaja, in the amount of $6,680. The County Court of Lowndes County granted Czaja’s motion for Judgment Notwithstanding the Verdict, which was affirmed by the Circuit Court of Lowndes County, and Hammack appeals asserting as the sole basis of error that the motion should not have been granted. We find that the motion was granted in error and therefore reverse.
EVIDENTIARY FACTS
¶ 2. On July 28, 1989, Penny Fukes hosted a party at her house in Columbus, Mississippi in celebration of the homecoming of her friend, Angela, who was back in town after having lived in Arizona for a time. Fukes personally invited Angela and friends, Mike Beatty and Becky Lar-geant, and asked them “to round everybody up”, leaving the remainder of the guest list to their discretion. Fukes planned a sleepover for the girls, a total of four including Fukes, after the party. The record shows that nine or ten people attended the party ranging in age from the late teens to early twenties. The festivities included a bonfire and cookout followed by a fast-paced drinking game called chandeliers, which persisted throughout the evening. Guests partook of blue Kool-Aid mixed with vodka, marijuana, and an abundance of beer. The record indicates that one of the male guests, Dale Hill, provided the marijuana, and Hammack and Beatty brought a case of beer. The record is unclear as to who provided the vodka and the remainder of the beer.
¶ 3. Among the guests attending the party was the appellant, Hammack, who was invited to the party by his friend, Beatty. Neither Hammack nor Beatty knew Angela well, but as a mere acquaintance from their high school days. At the time Angela was separated from her husband but not yet divorced. The divorce became final eight months later, in March, 1990. Angela, Hammack, and Beatty all admitted to marijuana use and heavy alcoholic consumption during the course of the evening. One guest, Becky, admitted that she was intoxicated at the party and another, Linda, said she was tipsy and got sick. Though Fukes claims that she did not know how much she had to drink, she said that she did not drink as much as everyone else did. Angela is the only female at the party who admits to having smoked marijuana during the party.
¶ 4. Testimony indicates that everyone at the party left the outdoor bonfire because of the numerous insects at the site. The party moved into the house where everyone participated in the drinking game of “chandeliers”. This resulted in the need for numerous trips to the bathroom by the game participants. In addition to playing “chandeliers”, the guests entertained themselves by throwing potato chips into the ceiling fan as its blades spun around. Having drunk to excess, Angela got sick and threw up in the bathroom. She was physically assisted from the bathroom to the bedroom by the other girls in attendance. The bedroom was furnished with a bed; however, she was placed on a mattress which was on the floor in anticipation of the sleepover. Most of the party guests were also in the bedroom at this time. The windows to this bedroom led to the front porch of the house and were open.
¶ 5. Hammack, Beatty, and Shawn Miller, another guest, all testified that Angela had been flirting with Beatty and Ham-mack during the evening, though the girls testified that she was simply being friendly with everyone. At some point everyone left the bedroom except Beatty. Beatty claims that Angela asked him to stay and Hammack testified that he heard Angela ask Beatty to stay. Angela testified that she thought Beatty was in the room lying down next to her to comfort her because *851 she was sick. She also testified that Fukes wanted him to leave. She said she did not believe that he would take advantage of her. Testimony as to Angela’s condition at this time is inconsistent. Hammack said she was wide awake; Angela claims that she was intoxicated and felt like a rag doll. Angela said that Beatty then raped her and forced oral sex on her. Beatty says the acts were consensual. Angela said that while she was with Beatty she heard Hammack on the porch tell Beatty through the open window to “leave some of that for me.”
¶ 6. Beatty then left the room, and Ham-mack came in later, claiming that he was at the time unaware that Beatty had had sex with Angela. Hammack says that he and Angela proceeded to have consensual intercourse and oral sex on the bed. Af-terwards, he went to the floor mattress to lie down, and Fukes came in and asked him to leave so she could dress. Angela denies having had oral sex with Hammack and claims he raped her. She admitted that she never yelled or cried for help and those on the front porch testified that they never heard her cry for help. She testified that she told Hammack “no” but that he persisted.
¶ 7. Fukes said that while she was on the porch swing she heard Angela say “stop” in an unclear moaning sound. Fukes then said she asked Shawn to get Hammack out of her room and that he and Becky went into the house. Shawn, however, testified on rebuttal that Fukes never asked him to go into the house to get Hammack out of the room. Becky said that she was in the room when Fukes came in and turned on the lights. At that time Hammack was on the mattress on the floor and Angela was in the bed. Fukes told Hammack to leave and when he left Angela began to cry and proceeded to tell her story. Hammack and Beatty were asked to leave the house. After cleaning the house, Fukes called the police.
¶ 8. Ron Cook of the Lowndes County Sheriffs Department was called about 2:00 in the morning. He went to the house and took statements from everyone who was there. Subsequently, Beatty and Ham-mack were charged with rape. No one had noticed any scratches on Hammack. Angela was taken to the hospital for tests, and Cook met her there but was unable to take a statement from her at that time because of her hysteria. A medical report was not entered into evidence. Cook did, however, take a statement from Angela the next afternoon.
STANDARD OF REVIEW
¶ 9. In numerous cases, the Supreme Court of the State of Mississippi has set forth a standard of review regarding a JNOV. The motion for JNOV is covered by Rule 50(b) of the Mississippi Rules of Civil Procedure. The motion tests the legal sufficiency of the evidence supporting the verdict and asks the Court to hold, as a matter of law, that the verdict may not stand. Spradlin v. Smith, 494 So.2d 354, 356 (Miss.1986). Where a motion for JNOV has been made, the trial court must consider all of the evidence— not just evidence which supports the non-movant’s case — in the light most favorable to the party opposed to the motion. In addition, the non-movant must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. General Tire and Rubber Co. v. Darnell, 221 So.2d 104, 105 (Miss.1969). If the facts and inferences considered in this manner point so overwhelmingly in favor of the movant that reasonable men could not have arrived at a contrary verdict, granting the motion is required. On the other hand, if there is substantial evidence opposed to the motion, that is, evidence of such quality and weight that reasonable and fairminded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied and the jury’s verdict allowed to stand. City of Jackson v. Locklar, 431 So.2d 475, 478 (Miss.1983). It is only when a directed verdict at the close of the plaintiffs *852 case or at the close of the defendant’s case would have been proper that a judgment notwithstanding the verdict is proper. C & C Trucking Co. v. Smith, 612 So.2d 1092, 1098 (Miss.1992).
ISSUE
DID THE LOWER COURT ERR IN FINDING THAT THE PLAINTIFF FAILED TO PROVE THE ELEMENTS OF MALICIOUS PROSECUTION AND THEREBY GRANTING THE MOTION FOR JNOV?
¶ 10. In order to prevail on a claim for malicious prosecution, the burden is on the plaintiff to prove by a preponderance of the evidence: (1) the institution of a criminal or civil judicial proceeding; (2) by, or at the insistence of, the defendant; (8) the termination of such proceeding in the plaintiffs favor; (4) malice in initiating the proceeding; (5) lack of probable cause for the proceeding; and (6) damage to the plaintiff as a result of the judicial proceeding. Bankston v. Pass Road, 611 So.2d 998, 1004 (Miss.1992). There is no dispute and Angela concedes that the plaintiff has met his burden in regard to the first, third and sixth elements of the claim: that a criminal proceeding was instituted, that it was terminated in the plaintiffs favor, and that there were damages to the plaintiff. Angela claims, however, that Hammack has failed to prove the remaining three elements: that Angela instituted the proceeding, lack of probable cause, and malice in the initiation of the proceeding. We will discuss these three elements separately.

1. Did Hammack shoio that Angela instituted the proceedings?

¶ 11. Angela argues that she did not institute the proceedings but that they were instituted by Ron Cook, the investigator from the Sheriffs Department. Bankston v. Pass Road, 611 So.2d at 1005 (citing Prosser and Keeton, The Law of Torts § 119 at 872-873 (5th ed.1984)), Angela claims that she merely stated what she believed and left the decision to prosecute entirely to the uncontrolled discretion of Cook. She claims that Cook conducted an independent investigation by taking statements from those in attendance at the party and that he actually filed the initial charge of rape. Relying on Godines v. First Guaranty Savings & Loan Ass’n, 525 So.2d 1321, 1324 (Miss.1988), she states that, “It is not enough for instigation that the actor has given information to the police about the commission of a crime, or has accused another of committing it, so long as he leaves to the police the decision as to what shall be done about any arrest, without persuading or influencing them.” Angela claims that Hammack has not presented any evidence to show that she did anything other than relay the information about the crime to the Sheriffs Department and that that is not enough to show that she instituted the proceedings.
¶ 12. We disagree because of the nature of the crime and the factual circumstances surrounding it. They are such that Angela is the only person who would have actual knowledge of the occurrence of the crime, other than Hammack himself. There is no dispute that there was no one in the room with Angela and Hammack when the incident occurred. ' We are in a “he said, she said” situation. Cook relied on her statement to him and on the statements of the others at the party. The statements taken by Cook from the party guests were all based on what Angela had said to them after the incident. Her knowledge of the crime and the institution of criminal proceedings for it extended beyond “mere passive knowledge of, or acquiescence or consent in, the acts of another” which would not be sufficient to make her liable. Winters v. Griffis, 233 Miss. 102, 108, 101 So.2d 346, 348 (1958). She was the proximate and efficient cause of putting the law into motion and is therefore liable for the instigation. Id. We conclude that it was just as much within her power to instigate the proceedings as it was within it to terminate them, as she did.

*853
2. Did Hammack shoiu that there was no probable cause for institution of the proceedings?

¶ 18. To determine the existence of probable cause, courts look to (1) a subjective element — an honest belief in the guilt of the person accused, and (2) an objective element — reasonable grounds for such beliefs. Strong v. Nicholson, 580 So.2d 1288, 1294 (Miss.1991). Both are essential. Benjamin v. Hooper Elec. Supply Co., 568 So.2d 1182, 1190 (Miss.1990). The lack of probable cause may be shown by circumstantial evidence but the plaintiff is usually required to show circumstances from which the absence of probable cause may be inferred. Id. If the evidence is such that the jury could have believed the prosecution was instituted without probable cause, the judgment appealed from should not be disturbed. Conn v. Helton, 282 Miss. 462, 469, 99 So.2d 646, 648(1958).
¶ 14. Angela argues that there was probable cause because the investigator, Ron Cook, believed she had a good case against Hammack. However, Cook based his belief on her representations and on the representations made by her friends to him, which were based on what she had told them. Angela was the ultimate source of all of this information. It was for the jury to assess the credibility of the statements made by and throhgh her in determining whether probable cause existed. Certainly the jury considered the statement taken by Cook from Angela’s friend, Linda, at Fuke’s house when he was called at 2:00 a.m. This statement, which Linda signed, stated that Angela was crying when Linda went into the bedroom. At that time Angela told Linda that Hammack and Beatty had each forced themselves on her while the other held her down and took advantage of her. Cook verified that this is what Linda told him although Linda testified that the statement did not come out the way she meant it. This statement was inconsistent with all other testimony presented at the trial, including Angela’s, that Hammack and Beatty were not in the room together when each incident occurred. It is evident that the version of events described in the statement taken by the investigator, Cook, is the basis upon which the decision to prosecute was made. The fact that Angela related a markedly different version at the trial, perhaps after realizing that this version would be uncorroborated, was a factor certainly considered by the jury is assessing her credibility and in ultimately finding a lack of probable cause, that is, that Angela did not have an honest belief that Hammack raped her and that there were reasonable grounds for this belief. Strong, 580 So.2d at 1294.
¶ 15. In addition, the jury could have considered the testimony regarding a phone call Fukes admitted making to Beatty after the charge for sexual battery was dismissed. Beatty testified that Fukes called him and said “no hard feelings.” Though Fukes admitted to the call, when she was asked if she said to Beatty “no hard feelings”, she changed her response from “no,” to no response, to not denying that she said it, and eventually denying that she said it. It was up to the jury’s discretion to make inferences from this response, its accompanying demeanor as well as all other evidence presented, in making its assessment as to whether probable cause for the proceedings existed. This evidence could have been considered by the jury as a circumstance from which the absence of probable cause could have been inferred. Benjamin, 568 So.2d at 1190. Furthermore, the jury was free to make inferences from the evidence presented that Angela chose to drop the charges for sexual battery just three days prior to trial and from her testimony that she had been to Delchamps on at least two occasions since the incident when Ham-mack was there working.
¶ 16. Other evidence from which inferences could be drawn showing lack of probable cause includes Angela’s ability to recollect, while claiming to be intoxicated and like a rag doll, that she heard Ham- *854 mack on the front porch tell Beatty to “leave some of that for me” when she was in the room with Beatty. If the evidence is such that the jury could have believed the prosecution was instituted without probable cause, the judgment appealed from should not be disturbed. Conn, 99 So.2d at 648. It is our opinion that Ham-mack successfully presented evidence from which the jury could have inferred the prosecution was instituted without probable cause, and the judgment appealed from should not be disturbed with regard to this issue. Benjamin, 568 So.2d at 1190.
S. Was there malice in the institution of the proceedings ?
¶ 17. The opinion of the County Court of Lowndes County which granted the JNOY fails to correctly defíne malice, stating that it refers to the defendant’s objective state of mind. To determine whether or not the defendant acted with malice in instituting the proceedings, the court is required to examine the defendant’s subjective state of mind. Owens v. Kroger Co., 430 So.2d 843, 846 (Miss.1983). Malice is a mental state. Its existence may be proved by circumstantial evidence, or the jury may infer malice from the facts of the case. Id. In the nature of things, malice is incapable of positive direct proof. Malice “refers to the defendant’s objective, not his attitude,” and can be inferred from the fact that a defendant may have acted with reckless disregard for a plaintiffs rights. Benjamin, 568 So.2d at 1191; Strong, 580 So.2d at 1293. The absence of probable cause in the institution of a criminal proceeding is a circumstance from which the jury would be permitted, but not required, to infer malice. Whitfield v. Westbrook, 40 Miss. 311 (1866). Therefore, in this case, the jury could have inferred malice from the fact that it found no probable cause.
¶ 18. Angela argues that the evidence was insufficient to make out a jury issue on the element of malice in instituting the proceedings. We believe that she does not correctly perceive the point. Malice does not refer, in this context, to evil intent. Rather, it refers to her objective or purpose in instituting the proceedings. Benjamin, 568 So.2d at 1191. It connotes a prosecution instituted primarily for a purpose other than that of bringing an offender to justice. Id.; Owens, 430 So.2d at 847; State Life Ins. Co. of Indianapolis v. Hardy, 189 Miss. 266, 277, 195 So. 708, 713 (1940). Furthermore, Mississippi law has emphasized that the question of malice is one of fact to be determined by a jury unless only one conclusion may reasonably be drawn from the evidence. Owens, 430 So.2d at 848 (quoting Brown v. Watkins, 213 Miss. 365, 373, 56 So.2d 888, 891 (1952)). The jury is free to infer malice from the totality of the circumstances presented to it and is restricted only by the boundaries of truth, without regard to policy or convenience. Owens, 430 So.2d at 846.
¶ 19. The controversy at hand shows as qualification of malice that Angela was married at the time of the incident and seeking a divorce. The law regarding malice gives the jury broad discretion in the inferences it may draw from this fact with regard to the circumstances and purpose in instituting the proceedings. The court in Strong found malice where the defendants “freely conceded that their lone purpose was to ‘get their stuff back’ ” and that they really did not care what happened to the plaintiffs. Strong, 580 So.2d at 1293. We thus find that there was sufficient evidence from which the jury could have inferred malice and find that the lower court was in error on this issue.
CONCLUSION
¶ 20. We are mindful of our standard of review requiring that the trial court must consider all of the evidence, not just evidence which supports the non-movant’s case, where a motion for JNOV has been made, in the light most favorable to Ham-mack, and that Hammack must be given the benefit of all favorable inferences that *855 may reasonably be drawn from the evidence. If there is substantial evidence opposed to the motion, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied and the jury’s verdict allowed to stand. City of Jackson v. Locklar, 431 So.2d 475, 478 (Miss.1983). We find that Angela was the proximate cause of putting the law into motion and is therefore liable for the instigation of the proceedings, that there was sufficient evidence presented from which a jury could have inferred malice, and that there was sufficient evidence presented from which the jury could have believed that the prosecution was instigated without probable cause. Having concluded that Hammack has successfully proven the three contested elements necessary to prevail on his claim for malicious prosecution, we decline to disturb the verdict of the jury and find that the JNOV was erroneously granted.
¶ 21. THE JUDGMENT OF THE CIRCUIT COURT OF LOWNDES COUNTY IS REVERSED AND RENDERED. THE JUDGMENT OF THE COUNTY COURT OF LOWNDES COUNTY IS REINSTATED. STATUTORY DAMAGES AND INTEREST ARE AWARDED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
McMILLIN, C.J., MOORE AND THOMAS, JJ., CONCUR. SOUTHWICK, P.J., CONCURS IN RESULT ONLY. KING, P.J., DISSENTS WITH A SEPARATE WRITTEN OPINION JOINED BY BRIDGES, IRVING AND PAYNE, JJ. MYERS, J, NOT PARTICIPATING.