SOUTHWICK, J,
for the Court:
¶ 1. Albert Brown and his son, Alvin Brown, brought suit against the City of Hazlehurst, its mayor, board of aldermen, police chief, and a police officer, alleging they were arrested without probable cause in violation of their Fourth Amendment rights. Other claims involved the Fifth and Fourteenth Amendments and state law torts of false arrest and malicious prosecution. The Copiah County Circuit Court entered summary judgment in favor of all defendants.
¶2. We affirm most of the judgment. We find disputes of material fact to exist as to the claims against the police chief and the officer in their individual capacities and reverse that portion only.
FACTS
¶ 3. On May 27, 1992, teenager Lakeith Brown attended a graduation party held at Stewart’s Club in Hazlehurst. At around 11:00 or 11:30 p.m. the party began to break up and several teenagers, including Brown, stood outside the club waiting for rides. They were laughing and singing, prompting Hazlehurst Police Officer James Mitchell to instruct the group to quiet down. After someone from the group responded to Mitchell, he grabbed Lakeith Brown by the neck and arrested him. When they arrived at the police station, Mitchell instructed Brown to call his parents so that they might come get him and take him home. Brown was not charged with any crime.
¶ 4. When Lakeith Brown’s mother, Geneva Brown, arrived at the police station, she asked for an explanation for her son’s arrest. The officers on duty informed her that she would have to see Officer Mitchell, who had gone home for the evening. Geneva Brown, Lakeith, and several other teenagers drove to Officer Mitchell’s home. It is at this point where the parties’ accounts of events diverge. According to Officer Mitchell, Mrs. Brown created a disturbance, used profanity, and threatened him by saying that she would return in the morning because “nobody messes with my children.” However, Mrs. Brown claims that she calmly asked Officer Mitchell why he had arrested her son. He refused to answer, so Mrs. Brown told the officer “that he has children my son’s age, and he wouldn’t like anyone to do his child like that.” At that point, Mrs. Brown alleges, Mitchell asked her if she was threatening him. She denied doing so. Both parties agree that Officer Mitchell then instructed Mrs. Brown to leave.
¶ 5. When Mrs. Brown and her party left, Officer Mitchell followed them and radioed for assistance. Mrs. Brown stopped at her sister’s house along the way. When she arrived at home, Officer Mitchell and two other Hazlehurst police officers were waiting. Mrs. Brown, Lak-eith Brown, and appellant Alvin Brown claim that there were fifteen officers stationed outside the home, while Albert Brown agrees that there were “ten or more.” The officers later stated that they attempted to place Mrs. Brown, Alvin Brown, and two other teenagers under arrest for disturbing the peace and disorderly conduct. Mrs. Brown resisted arrest. The others, including Alvin Brown, told the officers that they would have to *980 fight them in order to arrest them. Alvin Brown disputes this account, and claims that he was merely sitting in his yard talking with a friend when his mother arrived followed by fifteen police officers. He was then placed under arrest for no apparent reason.
¶ 6. According to the police officers on the scene, Geneva Brown’s husband, Albert Brown, who had been inside ill, came out of the house and informed them that there would be a “killing” and that no one would leave the “sub” alive. Mr. Brown went back into his house and returned wearing what was described as a “religious rag” over his head and carrying a bleach bottle that had been labeled “holy water.” He also had a book of matches. He poured the contents of the bottle around the officers, telling them that God would strike them down and that they were going to hell. He continued to incite a crowd of. approximately thirty friends and relatives who had gathered at the scene. The crowd shouted threats and obscenities at the officers until the police chief and a deputy sheriff arrived.
¶ 7. The Browns agree that Albert Brown emerged from the home with a bottle of what they called “holy water” and poured it on the. ground. They made no assertions as to whether he threatened anyone or incited the crowd. According to the Browns, the police arrested Albert Brown simply for pouring holy water on the ground. Although Mr. Brown was told that he was under arrest, when Chief Stuart later arrived, he, without knowing of the arrest, instructed Mr. Brown to return to his home. A warrant was issued a few days later for Albert Brown’s arrest.
¶ 8. Geneva Brown, Lakeith Brown, Alvin Brown, and two others were arrested and brought to the police station. Mrs. Brown was charged with disturbance of family, disorderly conduct, resisting arrest, failure to comply with an officer’s directions, and disturbing the peace. She was released upon posting bond and the others, who had not been charged, were released with her. Geneva Brown later pled guilty to resisting arrest and was found guilty of disturbing the peace. Albert Brown was charged with resisting' arrest and failure to comply with an officer’s directions. He was found not guilty on both charges. No one else was charged with a crime.
¶ 9. Albert Brown and Alvin Brown filed their complaint on May 27, 1993, against the City Of Hazlehurst, its mayor, board of aldermen, chief of police, and Officer Mitchell. The defendants were sued in both their official and individual capacities. The Browns alleged various federal constitutional violations. They further charged that Officer Mitchell and Chief Stuart were guilty of the state law torts of false arrest and malicious prosecution.
¶ 10. The defendants filed a motion for summary judgment on December 22, 1993, citing legislative, sovereign, and qualified immunities. On October 3, 1997, the Copi-ah County Circuit Court granted summary judgment, finding that the individual defendants were afforded absolute legislative immunity in their official capacities. The City was found covered by sovereign immunity. The individual defendants in their individual, non-official capacities were afforded qualified immunity. Finally, the circuit judge found that the Browns had failed to establish any facts in support of their state law claims of false arrest and malicious prosecution. The Browns appeal.
DISCUSSION
¶ 11. On this appeal, the Court employs a de novo review. A trial court may grant summary judgment “if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” M.R.C.P. 56. The summary judgment process usefully focuses the parties and the court on *981 whether there are disputes of relevant fact that need to be tried, or only disputes of relevant law for which there need be no trial. An appellate court’s review reconsiders the facts without any deference to the trial court’s fact-findings and applies its own interpretation of the law. Daniels v. GNB Inc., 629 So.2d 595, 599 (Miss.1993). If we find a material factual dispute, the trial court’s contrary view is not entitled to deference.
¶ 12. We review the facts without any consideration of weight or credibility. Whatever happened on the night in question is not for us to decide on this appeal. It is whether the disputes as to what occurred undermine the judgment that found the factual disputes to be immaterial.

I. Section 1983 claims

¶ 13. Section 1983 provides that a “person who, under color of any statute, ordinance, regulation custom, or usage, ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privilege, or immunities secured by the Constitution and laws, shall be hable to the party injured in an action at law” or other proper suit. 42 U.S.C.S. § 1983 (1994). The statute provides a remedy for violation of rights recognized in other provisions of law as opposed to creating any substantive rights itself.
¶ 14. State courts of otherwise competent jurisdiction have authority to hear section 1983 claims, a concurrent authority with the courts of the United States. Starnes v. City of Vardaman, 580 So.2d 733, 737 (Miss.1991).
A The City of Hazlehurst
¶ 15. “[UJnlike various government officials, municipalities do not enjoy immunity from suit — either absolute or qualified — under § 1983.” Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 166, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). The liability, though, only arises if there is a “policy” or “custom” instituted by the municipality or its policy-making authority. Only upon a demonstration of a policy or custom to violate the constitution, which is not to be confused with proof of policies supporting tortious conduct, can the municipality be held liable under section 1983. Otherwise, the municipality has immunity. Bankston v. Pass Road Tire Center, Inc., 611 So.2d 998, 1009 (Miss.1992). That does not mean that a written policy must exist.
¶ 16. The United States Court of Appeals for the Fifth Circuit has searched for the existence of a municipal custom or policy by examining whether relevant conduct by agents and employees has existed for so long or with such regularity that knowledge and acceptance by the governing body of the objectionable conduct can be inferred. Id. A single incident of unconstitutional activity is insufficient. In addition to proving the act in question, the plaintiff must demonstrate “the existence of the unconstitutional policy, and its origin,” which are “separately proved” from the act. City of Oklahoma City v. mttle, 471 U.S. 808, 823-24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985).
¶ 17. The Browns failed to introduce any evidence in the form of affidavits or otherwise that their alleged unlawful arrest was part of a pattern or custom on the part of the City of Hazlehurst to arrest its citizens or any segment of them without probable cause. Indeed, the Browns do not even attempt to establish any pattern of police misconduct. In their complaint, there is no mention of any additional instances of wrongful police conduct. The only facts which they allege relate exclusively to the single incident leading to this lawsuit. Moreover, they fail to identify any municipal policy or custom. They merely claim that the City is responsible for the policies, practices, and customs of the Hazlehurst Police Department. With-
*982 out supporting factual allegations, this statement is nothing more than a concluso-ry allegation.
¶ 18. The Browns have similarly failed to demonstrate that the City is responsible for the conduct of Officers Stuart and Mitchell. Respondeat superior liability cannot be applied to the supervisors or to the local government entities themselves; such defendants are liable only for their own unconstitutional acts, policies and customs, not the personal ones of agents and employees. Monell v. Department of Social Services, 486 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); 1 Sheldon H. Nahmod, Civil Rights and Civil Liberties Litigation, The Law of Section 1983, § 3.22 (1991) at 238.
In order to hold a municipality or a local government unit liable under Section 1983 for the misconduct of one of its employees, a plaintiff must initially allege that an official policy or custom was a cause in fact of the deprivation of rights inflicted. To satisfy the cause in fact requirement, a plaintiff must allege that the custom or policy served as the moving force behind the constitutional violation, or that her injuries resulted from the execution of the official policy or custom. The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts.
Spiller v. City of Texas City, 130 F.3d 162, 167 (5th Cir.1997).
¶ 19. The Browns failed even to allege that any policy or custom served as the “moving force” behind the unlawful arrests. Summary judgment for the City of Hazlehurst is affirmed.

B. Official capacity defendants

¶ 20. The circuit judge correctly noted that “[s]uits against the official capacity Defendants are tantamount to suits against the City itself, and therefore, all other official capacity Defendants must be dismissed.” The Mississippi Supreme Court has said that a “suit against a public official in his official capacity is nothing more than a suit against the entity.” Mosby v. Moore, 716 So.2d 551, 557 (Miss.1998) (upholding summary judgment for official capacity defendants). There is no need to retain defendants in their official capacity if the entity which they serve in that capacity is also a defendant. Summary judgment was properly entered in favor of all individual defendants sued in their official capacities — the board of aldermen, the police chief, and the police officer.
¶ 21. In addition, our affirming of the dismissal of the City supports that official capacity defendants — who are just named substitutes for the City — -also have no role in the suit. A suit against such persons in their official capacities requires the same proof as is required to establish liability against the City, “as an official capacity suit is a suit against the entity.” Sword and Shield Revisited: A Practical AppROach to Section 1983, 221-225 (1998). As we discussed above, the Browns have failed to point to any municipal policy or custom which caused their unlawful arrest.
¶ 22. The board of aldermen have an additional reason to be dismissed. They are afforded absolute legislative immunity from civil liability for actions in furtherance of their official duties. Dunmore v. City of Natchez, 703 F.Supp. 31, 32 (S.D.Miss.1988). Although the mayor is the elected chief executive officer of the city, he is entitled to absolute immunity from suit for acts taken in a legislative capacity. Hernandez v. City of Lafayette, 643 F.2d 1188, 1193 (5th Cir.1981).
¶ 23. We therefore affirm the dismissal of all official capacity defendants for the same reason that the City itself properly was released from liability.
C. Individual capacity defendants

1. Chief Stuart and Officer Mitchell

¶ 24. There is a qualified immunity under section 1983 jurisprudence *983 for government officials performing discretionary functions unless a reasonable person would have known that their conduct violated a clearly established statutory or constitutional right. Sorenson v. Ferrie, 134 F.3d 325, 327 (5th Cir.1998). “The qualified immunity defense protects all but the plainly incompetent or those who knowingly violate the law.” Babb v. Dorman, 33 F.3d 472, 477 (5th Cir.1994).
¶ 25. To determine whether this immunity applies, the first step is to decide whether the plaintiff has alleged that a clearly established constitutional right was violated. If so, then we decide whether a reasonable person would have understood that the act violated such rights.
¶ 26. Taking the first step, we note that Alvin and Albert Brown allege that they were arrested without probable cause. To be free of unreasonable arrest and detention is most certainly a constitutional right. U.S. Const, amend. 4. Violation of that right is grounds for a suit under section 1983. Johnston v. City of Houston, 14 F.3d 1056, 1061 (5th Cir.1994). Therefore this suit satisfies the first step of the analysis. We must next decide whether the conduct of Chief Stuart and Officer Mitchell was objectively reasonable.

a. Albert Brown

¶27. Albert Brown was not among those arrested on the night of the incident in question. He was arrested pursuant to an arrest warrant issued several days later. Accordingly, his only possible claim against Chief Stuart and Officer Mitchell is that they were responsible for his subsequent arrest. However, Mr. Brown’s affidavit contains no such allegations. In fact, he fails to identify the officers responsible for his arrest. Even if he had, he has failed to demonstrate that those officers would not be entitled to qualified immunity. “Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable will the shield of qualified immunity be lost.” Malley v. Briggs, 475 U.S. 335, 344-45, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). Mr. Brown does not challenge either the validity of the arrest warrant or the verity of the officers who procured it and thus, has failed to state a claim against Chief Stuart or Officer Mitchell.

b. Alvin Brown

¶ 28. According to Officer Mitchell’s affidavit, Alvin Brown was among the group which accompanied Geneva Brown to his home and threatened him; Geneva Brown’s affidavit named others but not Alvin as having gone to Mitchell’s house with her. When Mitchell later attempted to arrest the group, he claims Alvin Brown and three other minors informed him that “we would have to fight them to arrest them.” Officer Jason Tourne’s affidavit establishes that Mitchell placed Geneva Brown, Bryan Abbey, Larry Brown, Lak-eith Brown, and Alvin Brown under arrest for disturbing the peace, disorderly conduct, and public profanity. However, Tourne makes no mention of a prior threat to Officer Mitchell by anyone. The remaining affidavits of the other officers at the scene, Chief Ellis Stuart and .Officer Greg Kramer, do not mention the reasons for the arrest of Alvin Brown, but only confirm that he was taken to the police station.
¶ 29. Affidavits submitted by the Browns in opposition to the motion for summary judgment do not specifically contradict any of the aforementioned assertions. For example, Alvin Brown does not address Officer Mitchell’s contention that he threatened violence. Instead, he explains an entirely different set of events. His affidavit avers that he was merely standing in his yard when his mother arrived home from Officer Mitchell’s. He was then informed that he was under arrest. Alvin claims that “[t]he officers handcuffed me, my brother, Lakeith, my cousins, and my *984 mother and took us to jail.... I was just sitting in my yard and I was arrested.”
¶ 30. Geneva Brown’s affidavit supports her son’s claim that he was not among the group that confronted Officer Mitchell at his home. She similarly states that her son was just sitting in the yard when the police arrived. The affidavits of Albert Brown and Lakeith Brown allege that Alvin was arrested but do not address the alleged threat of violence.
¶ 31. We take the Browns’ affidavits as true and disregard contrary assertions in the defendants’ affidavits. All reasonable inferences are drawn in the Browns’ favor. The Browns allege that after a calm request for an explanation of the reason for the arrest of Lakeith Brown, Officer Mitchell became irate. The Browns left Mitchell’s home and, upon returning to their home, found a large number of police officers. Again relying solely on their affidavits as we must do on summary judgment, we find that they allege that the resulting arrests were based on no conduct that could remotely be considered to create probable cause to believe that an offense had occurred.
¶ 32. The officers argue that there is no constitutional right to be free from erroneous arrest or prosecution. With that we are in complete agreement. The constitutional right is to be free of “unreasonable searches and seizures,” which the Browns allege that this was. U.S. Const, amend. 4.
¶ 33. The officers argue that the affidavits at most are conclusory allegations about the absence of probable cause or other proper bases to make the arrest. To the contrary, the affidavits state that the mother of Lakeith Brown inquired respectfully about the basis for her son’s arrest, that she returned home to find her house surrounded by police. Alvin Brown swears that he was standing in his front yard talking to a friend when his mother arrived followed by the police. The police arrested him when he had done nothing more than stand in his yard. Alvin’s father, Albert Brown, describes a similar scene. He claims that he was arrested for sprinkling holy water around the police officers. The people arrested had no connection with the earlier graduation party disturbance nor, according to the affidavits, did anything to create a reasonable basis to believe that an arrest should be made. In their view, this was not error but conscious deprivation of rights.
¶ 34. Though not controlling on summary judgment, we acknowledge that Officer Mitchell swears that Alvin Brown came to his home with Geneva Brown and threatened him. When Mitchell later followed the Browns home and attempted to arrest Mrs. Brown, Alvin Brown informed him that he would have to fight him in order to arrest him. The affidavits of the other officers present on the scene assert that Albert Brown incited the crowd which had gathered at the Brown residence. He stated that “there was going to be a killing” and that the officers would not “leave the sub alive.”
¶ 35. There simply are two radically different events being described by the two different sets of affidavits. A genuine dispute exists as to the material facts of this case. “Summary judgment is inappropriate unless plaintiffs version of the violations do not implicate clearly established law.” Harper v. Harris County, Texas, 21 F.3d 597, 601 (5th Cir.1994). If a fact-finder accepts the Browns’ version of events, then a violation of the right to be free from unconstitutional arrest might be proven. Consequently, we reverse the grant of summary judgment in favor of defendants Stuart and Mitchell in their individual capacities on the section 1983 claims.

2. Mayor and board of aldermen

¶ 36. The Browns fail to make any allegations regarding the mayor and aldermen in their individual capacities. Indeed, they are not even mentioned in the affidavits. *985 The grant of summary judgment in their favor was proper.

II. Equal protection claims

¶ 37. The Browns failed to assert a claim under the Equal Protection Clause of the Fourteenth Amendment. “The essence of an equal protection claim is that other persons similarly situated as is the claimant unfairly enjoy benefits that he does not or escape burdens to which he is subjected.” Samaad v. City of Dallas, 940 F.2d 925, 941 (5th Cir.1991). There was no mention here that a similarly situated group even existed who was treated differently. The trial judge correctly granted summary judgment on this claim.

III. Conspiracy claims

¶ 38. Another federal statute under which suit was brought outlaws conspiracies to deprive any person of privileges and immunities secured by law. 42 U.S.C.S. § 1985(3) (1989). In order to assert this claim, a plaintiff must allege some class-based animus. At that point, the court can decide whether the class against which the defendants allegedly discriminated is within the parameters of section 1985(3). Burns-Toole v. Byrne, 11 F.3d 1270, 1276 (5th Cir.1994). “[T]o survive a summary judgment motion on a Title 42 U.S.C. S 1985(3) claim, the plaintiff must show a prima facie case: (1) that the conspirators had the intent to deprive her of the equal protection of the laws or of equal privileges and immunities under the laws; and (2) that there was some class based, invidiously discriminatory animus behind the conspirators’ action.... Mere statements of ultimate fact or conclusions of law are insufficient to raise an issue to defeat summary judgment.” Jefferson v. City of Hazlehurst, 936 F.Supp. 382, 391 (S.D.Miss.1995). The Browns failed' to produce any evidence of a conspiracy by anyone. Dismissal of the claim was appropriate.

TV. Fifth & Fourteenth amendment claims

¶ 39. The complaint alleges that the plaintiffs’ Fifth and Fourteenth Amendment rights were violated when they were placed in jail without “substantive and procedural due process,” and also when the police chief and the City failed to supervise, train, and discipline police in such a way as to avoid violation of their rights. We have already dealt with all claims made against the City and find them insufficient. Whether Office Mitchell and Chief Stuart violated the plaintiffs’ Fifth and Fourteenth Amendment rights to due process is the question here.
¶ 40. The Fourteenth Amendment protects citizens from the denial of due process by States. The similar provisions of the Fifth Amendment, initially applicable only to the federal government, have never been held to have become applicable to the States through the incorporation doctrine. Nahmod, Civil Rights, § 2.03 at 61; Pruett v. Dumas, 914 F.Supp. 133, 136 (N.D.Miss.1996) (“Fifth Amendment restricts the powers of the federal government and does not apply to state actions.”). Thus grounds for a Fifth Amendment claim were not stated and its dismissal was proper.
¶ 41. A violation of the Fourteenth Amendment’s due process requirements can create liability. It is that Amendment’s due process clause that has been interpreted to incorporate various Bill of Rights guarantees initially applicable only to the federal government into limits on State conduct. Mapp v. Ohio, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). The Fourth Amendment protection against unreasonable arrests is relevant to understanding the acts at the Browns’ home, and that clause is applicable to the States. Id. We have already discussed the illegal arrest claims and will examine here whether the Browns raise any other due process violation.
*986 ¶ 42. The process that is due after the arrest would protect against improper confinement, the absence of a hearing, and other deprivations of rights. We examine the affidavits for whether something further was alleged to happen — or did not happen as it should — after the arrest.
¶ 43. Of the two plaintiffs in this suit only Alvin Brown was arrested the night of the incident and taken to the police station. He was released without being charged. Thus there was no post-arrest deprivation against him that could be alleged. Albert Brown was not taken to the police station that evening but a few days later was served with an arrest warrant, taken to the police station to be booked, then released on his own recognizance. Two weeks later he was acquitted of the offenses. He makes no allegation that any of the proper post-arrest procedures were denied him.
¶ 44. The United States Supreme Court has explained that the “Fourteenth Amendment does not protect against all deprivations of liberty. It protects only against deprivations of liberty accomplished ‘without due process of law.’ A reasonable division of functions between law enforcement officers, committing magistrates, and judicial officers' — all of whom may be potential defendants in a § 1983 action — is entirely consistent with ‘due process of law.’ ” Baker v. McCollan, 443 U.S. 137, 145, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). The allegation here is that in the division of function, the police violated the plaintiffs’ rights with the arrest. We see no allegation nor evidence in the summary judgment affidavits that a later part of the division of function failed to provide the post-arrest process that was due.
¶ 45. We find that summary judgment was proper as to all due process claims.

V. State law claims

¶ 46. Alvin and Albert Brown sued Chief Stuart and Officer Mitchell for the state law torts of false arrest and malicious prosecution. On appeal, the Browns present no argument in support of these claims, but only challenge the grant of summary judgment on their section 1983 claims. Without an argument or authority upon which to base any discussion of the assignment of error, we have nothing to review. Brown v. State, 690 So.2d 276, 297 (Miss.1996).
¶ 47. We affirm the dismissal of the state law tort claims.
¶ 48. THE JUDGMENT OF THE CO-PIAH COUNTY CIRCUIT COURT IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART. ALL COSTS OF THIS APPEAL ARE TAXED TO THE APPELLEES.
McMILLIN, C.J., KING, P.J., BRIDGES, COLEMAN, LEE, PAYNE, AND THOMAS, JJ., CONCUR.
DIAZ, J., DISSENTING WITHOUT WRITTEN OPINION.
IRVING, J., NOT PARTICIPATING.